GRACE MURPHY v. AGNES KEATING.
GRACE O'HARA v. SAME.[1]

January 13, 1939.

Nos. 31,877, 31,878.

[1]Reported in 283 N. W. 389.

*John M. Gannon,* for appellants.

*H. A. Frankson* and *Hunt & Palmer,* for respondent.

JULIUS J. OLSON, JUSTICE.

The two negligence cases here for review arose out of an automobile accident that took place in North Dakota, August 15, 1937, on state highway No. 21 between Hettinger and Bismarck. Plaintiff Grace Murphy recovered a verdict for $210, and Miss O'Hara one for $2,200. Defendant's motions for judgment notwithstanding the verdicts were granted, and judgments in conformity therewith entered. Each plaintiff appeals therefrom. Miss O'Hara moved

for a new trial on the ground of inadequacy of verdict. That motion was denied, and she appeals also from that order. Of course, if the court was right in granting judgment notwithstanding, her motion for new trial need not be considered.

The complaints as originally drawn were in the form usually employed in cases where the guest sues his host for negligently operating an automobile. Defendant pleaded the general issue, alleged contributory negligence, and also pleaded the North Dakota guest statute (Laws North Dakota, 1931, c. 184) which provides that there must be gross negligence on the part of the host before liability attached unless the guest pays compensation for the ride. Section 3 of the act defines "guest" as follows: "For the purpose of this Act the term 'guest' is hereby defined as being a person who accepts a ride in any vehicle without giving compensation therefor." To meet the effect of the statutory provision relied upon by defendant, plaintiffs amended their respective complaints by alleging that each plaintiff "gave compensation to defendant for plaintiff's right and privilege of riding" in the automobile. When the testimony for plaintiffs was closed defendant asked leave, and the court granted her request, to amend her answers so as to plead joint enterprise, her position being that plaintiffs in seeking to avoid the guest statute had irretrievably established the fact that all parties here involved were engaged in a joint enterprise. The court submitted that issue and the other fact questions involved to the jury, with the result already indicated. So the cases hinge upon the single question of whether the evidence established as a matter of law that there was a joint enterprise.

Taking the testimony of plaintiffs themselves, that being the most favorable to them, we have these facts: Defendant, Miss Keating, plaintiffs, Grace Murphy and Grace O'Hara, and one Frances Tripp were teachers in the public schools of Hibbing. They were long-time and intimate friends. Over a considerable period of time they had conferred together in respect to making a trip to the west coast during the summer for the double purpose of spending their vacation there, also to earn and thereby secure more educational travel credits. The Hibbing school system had theretofore established a

rule, operative at the time here material, that where teachers travel or otherwise gain educational advantages by school attendance they thereby gain "educational credits"; and as "you go on and gain both educational and travel credits then you are changed in classification * * *" so that when a change of class is made effective "you can also get a raise" in salary. Miss O'Hara testified: "It means every time you can change your class if they are giving raises you can also get a raise." To accomplish the common ends and dual purposes stated, these ladies pooled their interests. They agreed that Miss Keating was to furnish her car, a 1936 Chevrolet (almost new, as it had only been run a little over 7,000 miles and was in first-class condition). She was also to pay the cost of minor repairs of the car and its accessories such as tires, etc., and was to bear the burden of general wear and tear of the car on the trip. The other three ladies were to share equally the gasoline and oil expense and garage rent. Plaintiff O'Hara, Miss Tripp, and defendant were experienced and competent drivers. Miss Murphy was not. So, to equalize amongst themselves the burdens and duties incident to the trip, Miss Murphy was to keep track of baggage and finances. She was the bookkeeper and treasurer, and to all appearances did her work in excellent shape. Each paid her own share of hotel bills, meals, and the like. The driving of the car was originally planned to limit each driver to 100 miles, when another would take her place. Later that plan was changed so that instead of driving 100 miles per shift each was to drive an hour and was then to be relieved by one of the other ladies.

As we have seen, the parties were anxious to secure a change of scenery and to get relaxation and rest, as well as to acquire educational values and definite credits in the school system by reason of this trip. Everything ran along smoothly and agreeably. Each had and freely exercised a voice in the driving arrangement, in making and completing the plans for the trip, and in making changes as to route, places to stop and to visit during the trip itself. Their purposes, route, places to visit, and final destination were common. There was no conflict amongst them; nor was any

one of them placed in a position of superiority over another. They were democratically governed in fact if not in name.

Miss Tripp was driving at the time of the accident, which occurred on the graveled highway hereinbefore mentioned. While going down a six per cent grade, there being some rather loose gravel and a flat tire having developed, Miss Tripp lost control of the car and it turned over. The two plaintiffs and defendant as well were injured, Miss Tripp so badly that she died later.

The present actions are predicated upon the negligence of Miss Tripp; that her negligence was chargeable to defendant as the owner of the car; and that her liability exists under the doctrine of *respondeat superior*. For defendant it is urged, and the court by its order determined as a matter of law, that upon the facts related the parties were engaged in a joint enterprise; hence that Miss Tripp's negligence was as much attributable to and chargeable against plaintiffs, the other occupants of the car, as to defendant.

■ There are two elements customarily required by the courts to establish joint enterprise, namely (1) a mutual undertaking for a common purpose, and (2) a right to some voice in the direction and control of the means used to carry out the common purpose. This is well illustrated in Cunningham v. City of Thief River Falls, 84 Minn. 21, 27, 86 N. W. 763, 765.

"Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interest in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control and management." (Citing authorities.)

And this rule has been followed in our subsequent cases. The same rule prevails elsewhere, as in Stearns v. Lindow, 63 App. D. C. 134, 70 F. (2d) 738, 740, where the court used this language:

"To constitute joint enterprise in such a case there must be not only joint or community interest, but also an equal right express or implied to direct and control the management and movement of the car."

Also in point are Noel v. Lapointe, 86 N. H. 162, 164 A. 769; 5 Am. Jur., Automobiles, § 501. In Restatement, Torts, § 491, comment g, p. 1277, the rule is stated thus:

"The fact that two or more persons, who do not jointly hire or own the car, agree that each shall pay a substantial share of the expenses of a particular trip does not of itself make the trip a joint enterprise. When, however, there are one or more of the following additional factors the determination whether there is a joint enterprise is a question for the jury subject to the power of the court to see to it that the jury reaches a reasonable conclusion. These factors are: (1) a common destination; (2) a power to determine or change the route from time to time by mutual agreement, and (3) the fact that the trip is for a common but non-business purpose."

■ It is generally held that the control required is the legal right to exercise such control. It does not necessarily require that there be actual physical control. Crescent Motor Co. v. Stone, 211 Ala. 516, 101 So. 49; Howard v. Zimmerman, 120 Kan. 77, 242 P. 131. Hence it has been held that it makes no difference that a passenger did not know how to drive and as such had no opportunity to exercise actual physical control. See Miles v. Rose, 162 Va. 572, 585, 175 S. E. 230, 235, where the court said:

"The relationship between the parties arising from the engagement, express or implied, between them, must be such that each of them has, or is, entitled to exercise a voice as to the manner in which the automobile shall be controlled and operated while making the trip. If the relationship between the parties is such that each is entitled to exercise a voice in the control and operation of the automobile, it is not material that the one not driving does not know how to operate an automobile, or has no opportunity actually to control the conduct of the driver, or that it has been expressly agreed or is necessarily understood that he will not interfere with the driver in the control and operation of the automobile."

■ While ownership of the car is an important circumstance and leads to a strong inference that the passenger has been invited as

a matter of accommodation and as such has no right to control, yet this is by no means a conclusive presumption. The evidence in this case effectively negatives any such inference. The manner in which the trip was planned prior to its commencement; the way the expenses thereof were handled in that all shared therein on a basis of equality; the relationship existing among these ladies both as to personal friendship and the nature of their professional engagements—all of these facts seem to justify no other conclusion than that they in fact were engaged in a joint enterprise. If these ladies were not, in view of the facts here presented, engaged in a joint enterprise, it would be virtually impossible in any case to find such.

In this connection counsel for plaintiffs call our attention to a statement made by Miss O'Hara that "Agnes [defendant] took the car away from her [Miss Tripp] once in the city." But he overlooks that in the same answer Miss O'Hara said: *"We didn't let Frances do the most difficult of the driving.* The mountain driving we did, Agnes and I."* (Italics supplied.) And she explains the reasoning employed by them for thus handling the situation by saying that "Frances did not react very quickly in emergencies, * * * but she was a good driver." Our attention is also called to the fact that defendant made a side trip of her own during the trip, and that this is indicative of her exercise of control as owner. In respect thereto the only thing we find in the record is testimony of defendant to the effect that:

"The only time I paid was when I took a little trip for myself and paid my own gasoline expenses.

Q. "That is when you went off on a little private tour?

A. "Yes, when I went to see my own friends.

Q. "And they [the other ladies in the party] were not along then?

A. "No."

So it seems apparent from all the facts and circumstances that these two items of deviation from the accustomed course of conduct

cannot make a jury issue of the question of joint enterprise. Nothing later happened to make such deviation or exception take the place of the arrangement previously made and subsequently implicitly followed. These ladies were not governed by any autocratic rule. There was no Hitler or Mussolini amongst them. Nor is it likely that plaintiffs, judging from what the record discloses, are of the type that would submit feebly and without protest to any one-party rule.

Defendant's contributions were the use of her car, the expenses incurred in its maintenance and upkeep, and the performance of her portion of the physical work in driving the car when her turn arrived. The other ladies contributed their portions by paying gasoline, oil, and garage bills, and rendering the other services assigned to each of them by common consent. There was no thought of gain or profit to any of them, and there was none.

■ Joint enterprise having been established, the next question is: What has that to do with the rights of the parties in these cases? Plaintiffs assert that this defense is unavailable to defendant; defendant of course claims otherwise.

The issues arising under circumstances such as here give rise to several classes of cases. Let us say, for illustration, that the driver here had negligently caused injury to a third party, not a member of the group, what would be the result in respect of liability on the part of the other parties to the joint enterprise? In such situation the cases hold that each member a party to the joint enterprise is liable to such third party; this upon the theory that the negligence of the driver is imputed to those engaged in the enterprise. Carpenter v. Campbell Auto Co. 159 Iowa, 52, 140 N. W. 225; Judge v. Wallen, 98 Neb. 154, 152 N. W. 318, L. R. A. 1915E, 436. Let us next suppose that this were an action on the part of any of the coadventurers to recover damages from a negligent third party. In this situation, if the driver of the car, the representative of the coadventurers, were contributorily negligent, such contributory negligence would effectively bar the right of the injured coadventurer.

Christopherson v. M. St. P. & S. S. M. Ry. Co. 28 N. D. 128, 147 N. W. 791, L. R. A. 1915A, 761, Ann. Cas. 1916E, 683; Hurley v. City of Spokane, 126 Wash. 213, 217 P. 1004. Let us next suppose that a coadventurer sues the one that is actually doing the driving, claiming and establishing negligence on the part of the driver as the sole cause of his injury. In that situation the weight of authority is that the rule of imputed negligence has no application, this for the simple reason that no one can avoid the consequences of his own negligence to the other. And that reason is sound. No one would contend that the servant, if he. be the cause of his master's injury, is immune to suit on the part of the master. And that is the general rule upon which negligence and recovery therefor rest in this class of cases.

" 'When the action is against a third person, each member of the joint enterprise is a representative of the other and the acts of one are the acts of all if they be within the scope of the enterprise. When the action is brought by one member of the enterprise against another, there is no place to apply the doctrine of imputed negligence. To do so would be to permit one guilty of negligence to take refuge behind his own wrong. * * *' " Berlin v. Koblas, 183 Minn. 278, 280, 236 N. W. 307, 308. Restatement, Torts, § 491, comment a, p. 1274; Thompson v. Farrand, 217 Iowa, 160, 164, 165, 251 N. W. 44, [3] 45, 46; Garrotto v. Butera, 123 Neb. 682, 686, 243 N. W. 879, 880; Harber v. Graham, 105 N. J. L. 213, 143 A. 340, 61 A. L. R. 1232. Especially instructive, on this phase at least, is the article appearing in 20 Minn. L. Rev. p. 401, and see p. 409, et seq., and the cases cited under notes. Additional cases upon this phase are found in annotations 62 A. L. R. 442, and 85 A. L. R. 632, under heading "IV. Liability as between the parties to the joint enterprise."

■ If Miss Tripp had survived and these actions had been brought against her, the problem presented would be easy of solution under the cited decisions. But with her death, as to her and her estate, the cause also died. Defendant's liability, if any such there is, necessarily must be derivative only. There is no issue in

these cases concerning any personal negligence on her part. That situation was recognized by the court, for it instructed the jury: "If the plaintiffs have failed to establish that Frances Tripp was negligent then there can be no recovery against Agnes Keating." So the question is: May plaintiffs recover damages from one of their fellow members in this enterprise for the negligent acts of their mutual agent and associate in such enterprise where the cause as to the agent died with the death of the agent? We think the answer must be in the negative. The applicable rule is well stated in 2 Mechem, Agency (2 ed.) § 2140, thus:

"Where two or more principals employ the same agent, whether as a means of dealing with one another or to protect their common interests, one can not charge the other not actually at fault with the misconduct of the common agent. The latter owes no more duty to one than to the other; * * *"

Roschmann v. Sanborn, 315 Pa. 188, 192, 172 A. 657, 658; N. B. Brown & Co. v. St. John Trust Co. 71 Kan. 134, 138, 80 P. 37, 38; 2 C. J. p. 855 [§ 538], and cases under note 52; 3 C. J. S., Agency, § 260, and cases under notes 62 and 64. See also Kokesh v. Price, 136 Minn. 304, 309, 161 N. W. 715, 717, 23 A. L. R. 643, where this court said: "If the driver of the vehicle is the agent of the passenger then the negligence of the driver, the agent, is the negligence of the passenger, the principal." (Citing many cases.) And in Olson v. Kennedy Trading Co. 199 Minn. 493, 496-497, 272 N. W. 381, 383, the same thought is thus expressed: "In a joint enterprise each party has authority to act for all parties thereto in respect to the means or agencies used to execute the common purpose." Strikingly analogous is the case of Martin v. N. P. B. Assn. 68 Minn. 521, 524, 525, 71 N. W. 701, 702. There plaintiff as administratrix brought action for the wrongful death of her husband, claiming that it was caused by negligent treatment of an injury received by the husband and for which he was being treated at a hospital owned and operated by the defendant, a voluntary association formed for the purpose of caring for injured employes of the railway company and their families. It was not incorporated. The

deceased was and had been a long-time member thereof. The court in affirming defendant's demurrer to the complaint said:

"No member had any greater or less rights or obligations than the deceased. The employes at the hospital were just as much the servants of Mr. Martin as they were of all or any other of his associates, and he could not bring a suit against another for a personal wrong done him by such servant, because it would be as much the act of Martin as that of his associates. * * * If the members were partners it is clear that one member could not recover of the others either in law or equity, for the tort of a servant of the firm, who was as much his servant as theirs, and for whose acts he was as much responsible as they were."

See also Carr v. N. P. B. Assn. 128 Wash. 40, 221 P. 979; Gilbert v. Crystal Fountain Lodge, 80 Ga. 284, 4 S. E. 905, 12 A. S. R. 255; Koogler v. Koogler, 127 Ohio St. 57, 186 N. E. 725.

We think the court was right in directing judgment, hence each judgment is affirmed.

