**ST. JOHNSBURY & LAMOILLE COUNTY RAILROAD**

v.

**CANADIAN PACIFIC RAILWAY COMPANY.**

Civ. A. No. 6183.

United States District Court,
D. Vermont.

April 28, 1972.

**1370**

Richard E. Davis, and Robert J. Kurrle, Barre, Vt., for plaintiff.

Robert Rachlin, Downs, Rachlin & Martin, St. Johnsbury, Vt., for defendant.

## OPINION AND ORDER

OAKES, Circuit Judge (sitting by designation).

### I. BACKGROUND

In this diversity case, plaintiff St. Johnsbury & Lamoille County Railroad seeks to recover damages for negligence and breach of warranty from the defendant, Canadian Pacific Railway Company.[1] On May 4, 1969, in Danville, Vermont, some distance from the railroad yard in St. Johnsbury, Vermont, fourteen cars of a train owned and operated by the plaintiff became dislodged from the remainder of the train and derailed. This resulted in the property damages for which the plaintiff seeks to recover. The plaintiff claims that this accident was caused by the failure of an inspector in the St. Johnsbury yard properly to perform his duties and that this inspector was an employee of the defendant. The defendant contends that the yard inspector was not negligent in the performance of his duties and that no contractual provisions between the parties were breached. Moreover, the defendant contends that under the terms of the so-called "Joint Facility Agreement" between it and the plaintiff, an agreement pertaining to the operation of the St. Johnsbury yard, the inspector was not an employee of the defendant but, rather, was a joint employee of both the plaintiff and the defendant at the time of the negligence complained of.[2] Finally, the defendant also contends that even if the inspector were its sole employee, federal regulations make the plaintiff's engine crew jointly responsible for any negligence of the inspector. Thus, it is the defendant's contention that even if the inspector were negligent, it is not liable to the plaintiff on account of this negligence.

The defendant has moved for summary judgment. It is the view of this court that summary judgment is proper because there is no genuine issue as to any material fact and the defendant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).

### II. NEGLIGENCE AS A GROUND FOR RELIEF

The defendant's claim that the yard inspector was a joint employee is based

1. The parties have waived any rights to arbitration, as provided for in paragraph 22 of the Joint Facility Agreement.

2. The defendant also contends, alternatively, that the yard inspector was the sole employee of the plaintiff according to paragraph 14 of the contract as quoted *infra.* We need not determine the validity of this contention by further interpretation of this contractual provision or the presentation of evidence because the plaintiff has admitted to the court facts from which it has concluded that the individual whose negligence is complained of was at least a joint employee. Whether the yard inspector was actually a sole employee of the plaintiff therefore does not affect the result we reach, and it will be assumed for the purposes of this opinion that the yard inspector was a joint employee rather than the sole employee of the plaintiff.

upon the Joint Facility Agreement dated August 1, 1964, between the plaintiff, the defendant, and a third railroad (the Maine Central). The defendant contends that this agreement establishes the employment status of the inspector regardless of any factual evidence the plaintiff might offer as to the inspector's status under general common law principles.[3]

The St. Johnsbury yard was originally owned and operated solely by the defendant for the service of its trains. Pursuant to the above mentioned agreement, the plaintiff and the Maine Central were permitted use of the yard. The Joint Facility Agreement is a detailed, typed contract consisting of 15 pages plus 14 pages of supplementary schedules. Its crucial provisions include the following:

14. All employees of Canadian Pacific engaged in maintaining, repairing or operating any portion of the joint premises, or in inspecting, dispatching, giving orders for or directing the movement of trains, cars or engines therein or thereon, or in the performance of any other service for the common benefit of the parties hereto, including those engaged in switching service hereunder, shall while engaged in such work, be deemed for the purposes of this agreement joint employees of the parties hereto . . . .

\* \* \* \* \* \*

16. Each of the parties hereto shall be responsible for all loss, damage or injury to all persons or property arising in connection with its use of the joint premises when trains, cars, engines or employees of the other parties or joint employees are not involved.

17. The parties to this agreement expressly covenant and agree each with the other that when trains, cars, engines or employees of more than one of the parties or of one or more of the parties and joint employees are involved in any accident in or upon the joint premises or other permises leased for joint purposes, the apportionment of liability for all loss, damage or injury shall be governed by the following provisions:

(a) If the employees of one party are solely at fault that party shall be responsible for the entire loss, damage or injury.

\* \* \* \* \* \*

(c) If the employees of one party together with joint employees are at fault, the party whose employees are at fault shall bear and pay all loss, damage or injury which its own property or property in its custody, or its employees or others claiming through them may have suffered by reason or in consequence of the accident. Responsibility for loss, damage or injury to joint employees or others claiming through them, and the joint switcher, shall be charged to the joint account, and responsibility for all other loss, damage or injury shall be apportioned equally between the said party and the joint account.

\* \* \* \* \* \*

(e) If joint employees are solely at fault, responsibility for all loss, damage or injury shall be charged to the joint account.

\* \* \* \* \* \*

(h) Any responsibility charged to the joint account under the provisions of this paragraph shall be divided among all parties to this

---

3. It is not unlikely that the plaintiff would be able to establish that the yard inspector was the defendant's sole employee under common law principles, since subparagraph 7(c) of the contract states:
 *Canadian Pacific shall employ all persons necessary for the operation of the*

*joint premises,* and shall require all such employees to be neutral in the performance of their duties as between the parties hereto, and to do the business of the other parties without discrimination. [Emphasis added.]

agreement in proportion to the contribution each party pays to the wages and other expenses of the joint employees involved in the accident during the month in which the loss, damage or injury occurs.

The relevant paragraph of the complaint in this action alleges that the defendant "through its agents and employees, was negligent in that the yard inspector failed to make a proper and suitable safety check and to properly check the braking system." The plaintiff admits that the yard inspector whose negligence is thus alleged was "engaged in . . . inspecting" within the meaning of provision 14 of the agreement. Paragraph 14 of the Joint Facility Agreement states that such persons "shall while engaged in such work, be deemed for the purposes of this agreement joint employees of the parties hereto . . . ." Because, therefore, the inspector was not a sole employee of the defendant but was a joint employee, paragraph 16 of the agreement, calling for sole responsibility of the employer of a sole employee, is inapplicable. Because the accident did not occur "in or upon the joint premises or other premises leased for joint purposes," but rather in Danville, some distance from the St. Johnsbury yard, provision 17 is inapplicable.

 Absent contrary contractual provisions, a legal term such as "joint employees," in a contract between parties in an equivalent bargaining position, acting with advice of counsel, must be given its normal legal meaning, and from this the usual legal ramifications flow. The term "joint employee" used here, therefore necessarily carries with it by implication the ordinary legal consequences in terms of rights and duties of the yard inspector in relation to the parties to the contract. And one of the long-established legal principles relating to the joint employee relationship is that one employer of a joint employee is not

liable in *respondeat superior* to another employer of this joint employee for the negligence of the joint employee. Although the court has found no Vermont cases directly on point, the authorities are well presented in Murphy v. Keating, 204 Minn. 269, 283 N.W. 389, 393–395 (1939). This doctrine is based on contributory negligence, the theory being that the negligence of the servant is imputed to both masters and that therefore neither has a cause of action against the other. Vermont's comparative negligence statute, 12 V.S.A. § 1036 (Supp.1971) might therefore change the doctrine, but this action arose before the effective date of that statute.

 The Restatement of Agency, Second § 317A(1) states:

Unless otherwise agreed between them, one of two principals who has made expenditures because of the conduct of a common agent is entitled to

(a) contribution from the other principal if, as between the two, each was equally responsible for the agent's conduct, or

(b) indemnity from the other principal if the agent's conduct was the result of a breach of duty to the plaintiff by the other principal.

Although it may be that this section is concerned with contribution or indemnity for payments made by a principal to a third person rather than injury to the principal himself, the language of this section may be broad enough to apply to the present case. However, this court holds that contribution or indemnity is not available in this case in light of the long-standing common law doctrine as expressed in *Murphy*, the lack of clarity of the Restatement on this issue, the lack of cases supporting the contrary view, the Vermont Supreme Court's long-standing position in a related area that there is no contribution or indemnity among joint tort feasors,[4] and the fact that this question is one of contrac-

---

4. E. g., Spaulding v. Oakes' Adm'r, 42 Vt. 343 (1869); see Viens v. Anthony Co., D.C., 282 F.Supp. 983 (1968).

tual interpretation in which we can assume the parties intended well-established law to apply.

The plaintiff asserts three theories in support of its contention that a cause of action for negligence exists: (1) the parties to the contract intended to exclude the instant factual situation from the operation of the contract; (2) even if the yard inspector's original negligence is not actionable because he was a joint employee, there was some subsequent period of time during which the yard inspector was the sole employee of the defendant and during which the inspector had a duty to warn the plaintiff of the perilous situation in which it had been placed; (3) clause 14 of the contract is unconscionable and therefore inoperative.

■ The plaintiff's first argument refers to paragraph 17 of the Joint Facility Agreement, which encompasses all accidents occurring when "trains, cars or employees of more than one of the parties or of one or more of the parties and joint employees are involved . . . ."; when the above mentioned trains, cars, or employees are not involved, paragraph 16 applies. The effect of paragraph 17, applicable to joint employees, is limited to accidents that occur in the yard, but paragraph 16, applicable only to sole employees, is not similarly limited. Plaintiff argues, therefore, that the parties to the agreement intentionally did not provide for the situation in which an accident involving joint employees occurred outside the yard, and that the parties thus intended the contract not to apply to this case. This omission is, however, neither crucial nor controlling. True, paragraph 14 provides that inspectors shall be deemed joint employees only "for the purposes of this agreement . . . ." But the purpose of the contract was quite broad: to set forth the duties and rights of the parties in relation to the use and operation of the St. Johnsbury yard, the joint facility. The parties intended the contract to define the status of employees for this broad purpose; that is to say, they intended that the yard inspector be considered a joint employee in determining their respective liability, regardless where an accident resulting from his negligence occurred.

■ The plaintiff's second argument is more easily disposed of. Any duty of the defendant to warn the plaintiff of the perilous situation in which it had been placed arose from the inspection or failure to inspect, at which time the yard inspector was a joint employee. If a common law duty[5] could be said to have arisen after the yard inspector had ceased being a joint employee, it would certainly be limited to the duty to warn of a *known* danger; there could be no breach of that duty by a *negligent* failure to warn. And the plaintiff does not contend that the defendant is guilty of an intentional tort.

■ The plaintiff's third argument is equally unpersuasive. Apparently recognizing that it lacks the inequality of bargaining power which is a prerequisite for unconscionability, the plaintiff argues that paragraph 14 unconscionably limits the tort rights of the plaintiff's *employees* to sue the defendant in certain circumstances.[6] It suffices to respond that the plaintiff's employees are parties neither to the Joint Facility Agreement nor to this action, and that the rights of the plaintiff's employees are in no way involved in the issue which is dealt with here.

Under the view of the law taken here, the defendant's arguments based on the regulations promulgated pursuant to The Power or Train Brakes Safety Ap-

---

5. Plaintiff also relies on 12 V.S.A. § 519 (a) (Supp.1971) which relates to "Emergency medical care", but deals only with "physical" harm to "persons," and does not mention civil liability.

6. Namely, when the plaintiff's employees are injured by those who would be employees of the defendant under circumstances in which the operation of clause 14 makes these defendant's employees sole employees of the plaintiff.

pliance Act of 1958, 45 U.S.C. § 9 (1970),[7] need not be reached.

## III. WARRANTY AS A GROUND FOR RELIEF

■■ The plaintiff alleges that the defendant contracted to employ a car inspector and supply car inspection services and that the defendant expressly warranted that the car inspector and inspection services would be safe and suitable for their intended purpose. Again, the contract itself is the sole point of reference, since it is an integrated document and the parol evidence rule bars the introduction of other evidence as to its terms. The only contractual provisions from which the plaintiff can take any succor are as follows:

> 3. Canadian Pacific shall maintain and operate all of the facilities on the joint premises, and shall carry on its payrolls such employees as are necessary from time to time to care for the railroad business of the parties covered by this agreement.

> \* \* \* \* \* \*

> (c) Canadian Pacific shall employ all persons necessary for the operation of the joint premises . . . .

This language does not bear construction as an express warranty on its face, but plaintiff argues, with more ingenuity then persuasiveness, that the use of the term "necessary" employees in paragraphs 3 and 7(c) of the agreement requires that the defendant provide inspectors who inspect in accordance with the requirements of the Power Brake Law, above alluded to, which sets forth standards for car safety inspections. This is reading more into the

agreement than the parties wrote, however, and while it may be that third parties could recover jointly and severally against either of the parties here for damage caused by an inspector's noncompliance with the federal law, such noncompliance in a given instance does not amount to a breach of any warranty expressed in this contract.

■ The plaintiff also claims, with more force, that warranties of merchantability and fitness for a particular purpose may be implied by analogy to article 2 of the Uniform Commercial Code, 9A V.S.A. § 2–101 et seq. It is clear that the Code does not apply directly to the case at bar, since this action does not involve a transaction "in goods." See § 2–102.[8] Plaintiff's argument is that warranties may be implied in contracts for the supply of services as well as products, just as they have been implied, for example, in the lease of chattels. E. g., Cintrone v. Hertz Truck Leasing & Rental Service, 45 N.J. 434, 212 A.2d 769 (1965).

The contract in the instant case is what one commentator has designated a "pure service contract" as opposed to a "mixed service contract" (involving the transfer of goods along with the performance of a service) or a contract for sale of goods. See generally Comment, The Extension of Warranty Protection to Lease Transactions, 10 B.C.Ind. & Com.L.Rev. 127, 132–134 (1968). A number of cases have held that there may be implied, either by inclusion under article 2 of the UCC or by analogy, warranties in contracts which would once have been designated "service" as opposed to "sales" contracts. E. g.,

---

7. C.F.R. § 232.11(a) (1971) states:
 Supervisors are jointly responsible with inspectors, enginemen and trainmen for condition of air brake and air signal equipment on motive power and cars to the extent that it is possible to detect defective equipment by required air tests.

8. "Goods" are defined as "all things . . . which are movable" with certain excep-

tions. § 2–105(1). The relevant provisions of the code relating to warranties speak of "sellers" and "contract[s] for the sale of goods." See §§ 2–313, 2–314. A "sale" is defined as "consist[ing] in the passing of title from the seller to the buyer for a price." § 2–106(1). A "seller" is a "person who sells or contracts to sell goods." § 2–103.

Hoffman v. Misericordia Hospital, 439 Pa. 501, 267 A.2d 867 (1970); see also Murray, Under the Spreading Analogy of Article 2 of the Uniform Commercial Code, 39 Ford.L.Rev. 447 (1971). Indeed, a recent Vermont decision has extended the implied warranty protection to a case involving the defective construction of a home. Rothberg v. Olenik, 128 Vt. 295, 262 A.2d 461 (1970). See also Mauran v. Mary Fletcher Hospital, 318 F.Supp. 297, 300–301 (D.Vt. 1970). And the commentators argue persuasively that "there is no apparent reason for . . . limiting the scope of implied warranties [by a 'sale-service' distinction]." Note, The Application of Implied Warranties to Predominantly "Service" Transactions, 31 Ohio St.L.J. 580, 581.

But this was not a contract by which defendant was to render "service" to plaintiff either in conjunction with or in the absence of a lease of facilities. Rather, it was a contract for the use of joint facilities in connection with which employees initially engaged by defendant were available to each contracting party for performance of services to whoever needed them. While engaged in such performance in the yard, as has already been seen, the employee was a "joint employee" under paragraph 14 of the agreement, and the services performed were "for the common benefit of the parties hereto" within that paragraph, not for the benefit of only one. To result in implication of one of the warranties one party must be rendering service to the other. Here responsible corporations negotiating on a roughly equivalent basis chose by contract to make the employees of one doing work in a railroad yard employees of all, and their work in the yard for the benefit of all. Paragraph 14 thus negates any implication of a warranty running from one of the parties to this joint enterprise to any other.

Accordingly, the defendant's motion for summary judgment on all counts is hereby granted.