# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2489

_____

| | | |
|---|---|---|
| Helen Fu and Steven Fu, | * | |
| | * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Ebonie Owens; Medcor, Inc., dba | * | |
| Medcor-Target Clinic and Clinic | * | |
| Practice Management, PC; Target | * | |
| Corporation, dba Medcor-Target | * | |
| Clinic and Clinic Practice | * | |
| Management, PC, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: May 12, 2010
Filed: October 6, 2010

_____

Before WOLLMAN, SMITH, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Helen Fu and Ebonie Owens both worked for the Medcor clinic in the Knollwood, Minnesota Target retail store. One day Owens physically attacked Fu causing several injuries. Medcor terminated Owens. Fu applied for benefits under the Minnesota Workers' Compensation Act (WCA). After initially paying some benefits, Medcor's insurance carrier denied the claim, contending that the injuries were the result of an intentional act. Subsequently, Fu and her husband, Steven, sued Medcor

in state court under several common-law theories and brought one federal claim under the Americans with Disabilities Act (ADA). The district court[1] granted summary judgment on all claims and the Fus appeal. We affirm.

## I. *Background*

Medcor is a management company that provides management and personnel services for in-store medical clinics. Medcor contracted with Target to provide these services to certain Target-owned clinics in Minnesota, including the Knollwood Target. Owens and Fu both worked for the Medcor clinic in the Knollwood Target. One day Owens attacked Fu, and Medcor subsequently terminated Owens. Fu applied for benefits under the WCA, but after initially paying benefits, Medcor's insurance carrier denied the claim, determining that the injuries were the result of an intentional act.

Subsequently, Fu and her husband sued Medcor in state court under common-law theories of assault, battery, false imprisonment, intentional and negligent infliction of emotional distress, negligent hiring, supervision, and retention, and loss of consortium. Fu also alleged claims against Medcor for disability discrimination under the ADA and the Minnesota Human Rights Act, violation of Minnesota Whistleblower's Act, wrongful termination, breach of contract, and defamation. Because the state court complaint alleged a disability discrimination claim arising under the ADA, Medcor removed the action to Minnesota federal district court. Medcor subsequently brought a motion for summary judgment that the district court granted. The district court dismissed the tort-based injury claims pursuant to the

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

exclusivity provision of the WCA.[2] The district court also dismissed the remaining claims for disability discrimination, whistleblower violations, breach of contract, and defamation. The district court further ruled that Target and Medcor were not engaged in a joint enterprise. Finally, the district court held that Neka Swinney's affidavit, offered by the Fus after the close of discovery, was not properly disclosed and could not provide a basis to defeat Medcor's summary judgment motion.

## II. *Discussion*
### A. *Common Law Claims and the WCA*

On appeal, the Fus argue that their common law claims are excepted from the exclusivity provisions of the WCA.[3] Specifically, the Fus contend that their assault and battery claim is noncompensable under the WCA pursuant to *McGowan v. Our Savior's Lutheran Church*, where the court stated that certain assault cases "are

---

[2]The Minnesota Workers' Compensation Act provides in pertinent part:

Every employer is liable for compensation according to the provisions of this chapter and is liable to pay compensation in every case of personal injury or death of an employee arising out of and in the course of employment without regard to the question of negligence. The burden of proof of these facts is upon the employee.

Minn. Stat. § 176.021, Subdivision 1.

"The liability of an employer prescribed by this chapter is exclusive . . . ." Minn. Stat. § 176.031.

"Personal injury does not include an injury caused by the act of a third person or fellow employee intended to injure the employee because of personal reasons, and not directed against the employee as an employee, or because of the employment." Minn. Stat. § 176.011, Subdivision 16.

[3]The Fus do not appeal the dismissal of the remainder of their claims.

noncompensable under the [WCA] because the assailant was motivated by personal animosity toward his victim, arising from circumstances wholly unconnected with the employment[.]" 527 N.W.2d 830, 834 (Minn. 1995). The Fus argue that Owens's attack on Mrs. Fu was based on racial animus and thus wholly unconnected with Fu's employment. Accordingly, the Fus submit that the district court erred in dismissing this claim based upon the exclusivity provision of the WCA.

> We review de novo a grant of summary judgment. Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.

*Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1033 (8th Cir. 2007).

The Minnesota cases that have addressed the exclusivity exception have framed the issue in the following terms:

> [T]he central question is not whether the employee was injured merely while at his or her employment, *but whether the injury occurred because the employee was at the job* "*in touch with associations and conditions inseparable from it.*"

*Stengel v. E. Side Beverage*, 690 N.W.2d 380, 386 (Minn. Ct. App. 2004) (quoting *Johnson v. Ramsey County*, 424 N.W.2d 800, 805 (Minn. Ct. App. 1988)) (emphasis added). In *Stengel*, the plaintiff brought suit alleging various common law claims including "common-law assault and battery, intentional infliction of emotional distress, and numerous other claims." *Id.* at 381–82.

> The alleged conduct which formed the basis for [plaintiff]'s claims include[d] a co-worker sticking his finger in between the buttons of [plaintiff]'s blouse, between her breasts, and moving his finger back and

forth while saying "ding, ding, ding . . ."; another co-worker shoving his hand up her leg saying, "Oh, dead man's curve, I'd like to get some of that," and then grabbing [plaintiff] and reaching for her vagina; her supervisor leaning his body against hers and kissing her; and various other co-workers grabbing her buttocks, grabbing and snapping her bra, and slapping her backside with a rolled up sign.

*Id.* at 382. The court in *Stengel* concluded that "a genuine issue of material fact exist[ed] as to whether the alleged acts were directed against [plaintiff] for personal reasons or as an employee." *Id.* at 386–87. Accordingly, the court held that summary judgment was inappropriate for the plaintiff's assault and battery claim. *Id.*

Contrastingly, in *McGowan* the plaintiff commenced a negligence action "seeking damages for injuries she sustained as a result of being raped while working as director of [a] homeless shelter . . . ." 527 N.W.2d at 831. The Minnesota supreme court stated:

It is . . . clear that McGowan's employment was a causal factor contributing to her being raped. At the time she was raped, McGowan was the shelter's director and had never had any contact with her assailant outside the workplace. Further, the assault occurred during working hours, in her office, while she was directly engaged in the performance of her work duties. Based on these facts, we cannot say that the rape arose from circumstances unrelated to McGowan's employment.

*Id.* at 834. Accordingly, the court held "McGowan's injuries are covered under the [WCA] because they resulted from an assault arising solely out of McGowan's activities as an employee." *Id.*

The Fus' case is analogous to *McGowan*. First, when Owens assaulted Fu she had never had any contact with Owens outside of the workplace. Second, the assault occurred during working hours, at the clinic, while Fu performed her work duties.

Furthermore, although the record reflects that Owens may have harbored racial animus toward Fu, it also reflects that Owens disliked Fu for specific, work-related reasons such as Fu reporting Owens's allegedly inferior job performance to clinic supervisors. In fact, Fu reported to supervisors that Owens was not assisting with computer problems at the clinic on the very day of the attack.

Furthermore, the Fus' case is distinguishable from *Stengel*. In *Stengel*, nothing indicated that the various assaults were in any way work-related. The *Stengel* court stated that "courts must examine cases on their individual facts to determine whether the employee's job function was *somehow related to the injury*. If it is not, then the assault exception applies and the employee's common-law claim is not barred by the Workers' Compensation Act." 690 N.W.2d at 386 (emphasis added). In this case, "[b]ased on these facts, we cannot say that the [assault] arose from circumstances unrelated to [Fu's] employment." *McGowan*, 527 N.W.2d at 834. Accordingly, in answering *Stengel's* "central question," we hold that Fu's "injury occurred because [she] was at the job in touch with associations and conditions inseparable from it." 690 N.W.2d at 386 (internal quotations and citation omitted).

## B. *Swinney's Affidavit*

Next, the Fus argue that the district court abused its discretion in excluding Swinney's affidavit. The Fus contend that there is nothing on the record that indicates that Mrs. Fu engaged in bad faith in concealing Swinney's existence.

Although the record indicates that the Fus did not engage in bad faith in concealing Swinney, the Fus have not provided an excuse for untimely disclosing the Swinney affidavit. Federal Rule of Civil Procedure 37(c)(1) provides in relevant part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

-6-

Federal Rule of Civil Procedure 26(a)(3) provides in pertinent part:

> (A) *In General.* In addition to the disclosures required by Rule 26(a)(1) and (2), a party must provide to the other parties and promptly file the following information about the evidence that it may present at trial other than solely for impeachment:
>
> > (iii) an identification of each document or other exhibit, including summaries of other evidence—separately identifying those items the party expects to offer and those it may offer if the need arises.

The Fus have not provided substantial justification for failing to timely disclose Swinney's affidavit nor have they demonstrated that such failure is harmless. *See* Fed. R. Civ. P. 37(c)(1).

Furthermore, the district court did consider the Swinney affidavit, noting that "even if plaintiffs could use Ms. Swinney's testimony, however, that testimony at most shows that Owens did not like Fu." Accordingly, Fu was not prejudiced by the exclusion of the Swinney affidavit because the district court actually considered it but found it immaterial.

## C. *Joint Enterprise*

Finally, the Fus argue that they demonstrated a material fact issue as to whether Target and Medcor were engaged in a joint enterprise thereby making Target jointly liable for Mrs. Fu's injuries. The Fus also contend that the district court's analysis erroneously conflates the concepts of joint venture and joint enterprise.

We disagree and affirm. In *Murphy v. Keating*, the Minnesota supreme court stated:

> There are two elements customarily required by the courts to establish joint enterprise, namely, (1) a mutual undertaking for a common purpose,

and (2) a right to some voice in the direction and control of the means used to carry out the common purpose. This is well illustrated in *Cunningham v. City of Thief River Falls*, 84 Minn. 21, 27, 86 N.W. 763, 765 [(1901)]; "Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interest in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control and management."

283 N.W. 389, 392 (Minn. 1939). The agreement between Target and Medcor expressly provided that Medcor was operating independently from Target, that neither Medcor nor its employees were "employees, joint ventures, partners, contractors, or lessees of Target or employees leased to Target," and that Medcor had "sole control over the manner, means and methods by which Medcor and Medcor's employees . . . perform services" under the agreement. The agreement also expressly provided that Medcor alone had sole control over its employees, stating that Medcor alone was responsible for "selecting, hiring, training, supervising and terminating" the employees it used to provide clinic services. Based on this contractual language, we hold that the district court did not err in concluding that Target and Medcor were not engaged in a joint enterprise under Minnesota law. *See Murphy*, 283 N.W. at 392; *Weber by Sanft v. Goetzke*, 371 N.W.2d 611, 616 (Minn. Ct. App. 1985) ("The right to legal control means that all involved in the undertaking must have a joint or mutual right to direct the agency used to carry out the common purpose. . . . By its terms 'legal control' implies an enforceable right to control the movements of another."). Because we hold that Target and Medcor were not engaged in a joint enterprise we need not address the Fus' contention that the district court erroneously conflated the concepts of joint venture and joint enterprise.

### III. *Conclusion*

We affirm.

_____