LAWRENCE ZYLKA, BY CELESTINE ZYLKA, HIS FATHER AND NATURAL GUARDIAN, AND ANOTHER v. CLARENCE LEIKVOLL, d.b.a. CLAR'S TEXACO, AND OTHERS.

144 N. W. (2d) 358.

July 22, 1966—Nos. 39,460, 39,461, 39,462.

436

*Quinlivan, Quinlivan & Williams,* for appellant Leikvoll.
*Carroll, Cronan, Roth & Austin,* for appellant Traphagan.
*Rufer, Blatti, Hefte & Pemberton* and *Richard L. Pemberton,* for appellant Bounds.
*Gordon Rosenmeier* and *John E. Simonett,* for respondents.

ROGOSHESKE, JUSTICE.

Appeals from an order denying defendants' alternative motions for judgment notwithstanding answers to interrogatories or for a new trial.

The action arises out of a series of events occurring on Highway No. 10 at a point about a mile south of Little Falls at approximately 6 p. m., December 15, 1961. At that point, Highway No. 10 is a blacktop, four-lane highway running north-south and having two northbound and two southbound lanes that are separated by a wide, unsurfaced divider strip. The shoulders on each edge of the northbound lanes are 8 feet wide. A blacktop crossover, 52 feet wide, traverses the divider strip and connects the north and southbound lanes. It is located slightly north of the North Star gas station, which was then being operated by plaintiff's uncle, Melvin Zylka.

At the time of the collisions hereafter described, it was dark and about 30 degrees below zero. The roads were clear and dry. Sometime between 5 and 6 p. m., defendant Clarence Leikvoll, doing business as Clar's Texaco Station located in the city of Little Falls, was engaged in efforts to start a Pontiac automobile owned by his customer, defendant Albert S. Traphagan. With Traphagan steering, the Pontiac was pushed by a wrecker owned and operated by Leikvoll. After pushing it within the city of Little Falls and then south on Highway No. 10 beyond the city limits without starting the engine, the drivers decided to return to the city.

As the vehicles reached the crossover near the North Star gas station, they turned east into the crossover and stopped, preparatory to continuing to push the Pontiac upon the northbound lanes to Little Falls. A yield-right-of-way sign faced the two vehicles as they waited to enter the northbound lanes. There is dispute as to whether Traphagan's vehicle extended into the northbound lanes while stopped, but it is undisputed that the position of the Pontiac was the result of the normal braking action of Traphagan, who controlled his stop without being pushed ahead "against his brakes" by Leikvoll, and that Traphagan was not pushed "a little extra" by Leikvoll prior to the breaking of contact between the wrecker and the Pontiac.

As they waited for traffic to clear (there was a string of seven or eight

northbound vehicles approaching for which they decided to wait as traffic was "too close to take a car out into it"), Traphagan claims to have gotten out of his Pontiac to look at his headlights. He testified they were on. He returned to his car, and as he sat down and was settling himself he was struck in the right front fender by defendant Rodney E. Bounds, who was driving a white Ford and was traveling north toward Little Falls on Highway No. 10. At no time prior to this collision did Leikvoll have lighted the warning light affixed to the top of the cab of his wrecker.

Bounds testified that prior to the collision he had been traveling 55 miles per hour in the left lane of the two northbound lanes of the highway. He had passed a semitruck driven by witness Vern Rodekuhr, and after glancing into his rearview mirror, was preparing to "pull back into [his] right-hand lane" when the impact occurred. He further testified that he covered 200 or possibly 300 feet while looking in the rearview mirror. When he looked forward he saw the Traphagan vehicle 50 to 75 feet ahead of him. He did not see any lights on it. All testimony indicates that Bounds was "driving properly, spaced toward the center of the traffic lane." Bounds thought Traphagan's vehicle was blocking at least half of his lane of travel.

The collision spun both vehicles around counterclockwise. Traphagan's Pontiac came to rest near the north edge of the crossover facing west with its rear end protruding some feet onto the main traveled portion of the west lane of the northbound lanes and its front end partially in the ditch at the edge of the shoulder. Bounds' Ford lay astride the centerline of the northbound lanes facing southwest, with its right front approximately 15 feet north of the Pontiac and about 3 feet from the west edge of the blacktop. There is testimony that the lights on both vehicles were off.

After their vehicles came to rest, both Bounds and Traphagan got out of their cars and started to direct oncoming traffic around the east side of the Bounds car where there was passage upon about 5 feet of the east lane and the 8-foot shoulder. After about 1 to 3 minutes, Bounds felt "woozy." He felt he was going to faint and testified he knew he had to "sit down someplace mighty quick," so he got into Traphagan's Pontiac. Traphagan claims he saw Bounds in what appeared to be a "shock

state." Traphagan testified Bounds complained of being cold and therefore he assisted him into the Pontiac. Bounds remained in that position until the second collision. Traphagan continued to stand near the left rear of the Bounds Ford on the centerline, directing cars without a flashlight or flare, although Leikvoll had both available in his wrecker.

Leikvoll, after investigating the physical condition of Traphagan and Bounds, returned to his wrecker, picked up his flashlight, and crossed the highway to the east side where the semitrailer driven by Rodekuhr was stopped near the north driveway entrance to the North Star gas station. Leikvoll testified that he requested the driver to call the highway patrol. Just then a car driven by Loren Simmons, an acquaintance of Leikvoll, stopped and parked in the north station drive. Simmons told Leikvoll he had a fusee or flare in the trunk and that he would get it for him.

Leikvoll then crossed back over to his wrecker (still parked in the crossover) and put on the wrecker's three flashing red lights. These included the red dome blinker light on top of his cab, 3 to 4 inches in diameter and 5 inches high, and two flashing red lights, 6 to 7 inches in diameter, mounted on each side of the cab about 4 feet ahead of the rear dual wheels and 5 feet off the ground. The red top blinker light was 7 feet off the ground. He also turned on the amber clearance lights and the red rear parking lights.

Thereafter Leikvoll returned to Simmons, received the now-lighted flare from him, and during a gap in northbound traffic, proceeded south along the east shoulder of the highway carrying the flare and his lighted flashlight. It is undisputed that Leikvoll used the flare given to him by Simmons. The flare which he was carrying in his own wrecker was not put to use. As Leikvoll proceeded south, he flagged down approaching traffic. Approximately 400 feet south of the accident scene, he came upon a pickup truck parked on the east shoulder with its clearance lights flashing and its parking lights on. Melvin Zylka, uncle of plaintiff, Lawrence Zylka, had driven the pickup truck out of his station and had parked it on the shoulder after the accident. Leikvoll stopped and stationed himself 10 feet north of the pickup at a point 400 feet south of the accident

scene. He testified it was his intention to place the flare on the blacktop and cross to the west shoulder to flag traffic with his flashlight.

Leikvoll, then standing about 1 foot east of the blacktop, saw a car approaching in the east lane close to him. He signaled it with his flare and it started slowing down. He then saw another car proceeding north in the west lane passing the slower-moving vehicle. When Leikvoll first saw the second vehicle, driven by 18-year-old defendant Kenneth P. Cech and owned by Cech's passenger, defendant Lawrence E. Motl, it was about a half a block away. Cech did not slacken his speed, estimated at 55 miles per hour, as he passed Leikvoll. Leikvoll shouted a warning to watch out. His shout was clearly heard by witness Rodekuhr, who was approximately 500 feet north of the Bounds and Traphagan vehicles, and by Traphagan, alerting him to the oncoming Cech vehicle. In response, Traphagan stepped back to the east to avoid being hit by Cech and also shouted, "Watch out."

Cech testified that he had driven in the west or left-hand lane of the northbound part of the highway since leaving Royalton, located 10 miles south of Little Falls. Cech saw a flashing red light of the wrecker while still a half mile south of the accident scene. He continued to observe this light as he covered this half-mile distance. He observed it was "in the crossover near the entrance to the service station," and he was positive that it was not moving. He claimed to be looking at "the red light as well as the whole roadway ahead." The red light did not distract his entire attention to the left and did not cause him any difficulty in his forward view. He testified further that he knew that a flashing red light means "slow down, drive with caution, try to stop."

Neither Cech nor Motl saw Leikvoll's red flare which he was waving over his head, nor did they hear Leikvoll's shouted warning or see the flashing lights of Melvin Zylka's pickup truck on the right or east side of the highway. Cech testified he saw no evidence of an obstruction ahead of him until he reached a point a few feet to the south of the crossover. At that point he saw the Traphagan vehicle. Only then did Cech apply his brakes and veer left toward the divider (Cech felt his "best bet was to turn left"), where he struck and seriously injured plaintiff, Law-

rence Zylka, a pedestrian, and thereafter collided with the middle of Traphagan's Pontiac, causing Bounds to be thrown out and injured.

Plaintiff, Lawrence Zylka, aged 18, was employed at his uncle's North Star gas station where he worked until 6 p. m. on the day of the accident. He heard the crash of the first accident and went outside of the station. He remembered seeing his uncle drive his pickup out of the station and park it south of the accident on the shoulder, and from the station, some 200 feet east of the crossover where the accident was, he could see the wrecker with its blinking red light on top and the silhouettes of the Traphagan and Bounds cars. He started over to the accident scene "to see if [he] could help any." He was not summoned to the area by anyone. The last thing he remembers was being on the east shoulder of the highway slightly north of the station driveway. Zylka suffered retrograde amnesia and can remember nothing from that point of time until he awakened in the hospital.

Traphagan testified that at the time he heard Leikvoll's shouted warning he saw plaintiff running across the highway in a northwesterly direction toward the west shoulder, framed in Cech's headlights, just before he was struck. According to Traphagan, plaintiff at no time stopped or slowed down but kept on running until he was hit.

Cech testified that when he first saw plaintiff he was "dashing toward the divider." At that point plaintiff was to the east of the Cech car, running toward the west. Plaintiff was about 5 feet south of the Traphagan vehicle when Cech ran into him and knocked him forward, pinning him beneath the Traphagan Pontiac.

The time interval between the first and second collision was 4 to 5 minutes.

Suit was brought by plaintiff and his father against Leikvoll, Traphagan, Bounds, Cech, and Motl; Traphagan cross-claimed against Bounds for damage to Traphagan's vehicle; Bounds cross-claimed against Traphagan, Leikvoll, Cech, and Motl for injuries to his person.

Interrogatories were submitted to and answered by the jury as follows:

"1. Was there negligence on the part of Traphagan which was a proximate cause of injury to Lawrence Zylka? Yes or No.

"Yes.

"2.  Was there negligence on the part of Leikvoll which was a proximate cause of injury to Lawrence Zylka? Yes or No.

"Yes.

"3.  Was there negligence on the part of Bounds which was a proximate cause of injury to Lawrence Zylka? Yes or No.

"Yes.

"4.  Was there negligence on the part of Cech which was a proximate cause of injury to Lawrence Zylka? Yes or No.

"Yes.

"5.  Was there negligence on the part of Lawrence Zylka which contributed as a proximate cause to his injury? Yes or No.

"No.

"6.  What amount of damages did Lawrence Zylka sustain?

"125,000 Dollars.

"7.  What amount of damages did Celestine Zylka sustain?

"12,000 Dollars.

"8.  Was there negligence on the part of Traphagan which was a proximate cause of injury to Bounds? Yes or No.

"Yes.

"9.  Was there negligence on the part of Leikvoll which was a proximate cause of injury to Bounds? Yes or No.

"No.

"10.  Was there negligence on the part of Cech which was a proximate cause of injury to Bounds? Yes or No.

"Yes.

"11.  Was there negligence on the part of Bounds which contributed as a proximate cause to his injury? Yes or No.

"Yes.

"12.  What amount of damages did Bounds sustain?

"145.00 Dollars.

"13.  Was there negligence on the part of Bounds which proximately caused damage to the Traphagan car? Yes or No.

"Yes.

"14.  State the amount of damages so caused to the Traphagan car.

"460.00 Dollars."

The three defendants who appeal argue that their negligence was not a proximate cause of plaintiff's injuries but was superseded by the intervening negligence of defendant Cech. Defendants Leikvoll and Bounds claim they breached no legal duty to plaintiff and that plaintiff was contributorily negligent. Defendants Leikvoll and Traphagan argue that the jury's verdict may be perverse. Bounds argues that the court erred in a portion of its instructions to the jury and in denying him the right to impeach his own witness.

■  Defendants argue that as Cech approached the accident scene from the south, traveling in the west or left-hand lane, he was confronted with the following warnings, any one or all of which should have alerted him to the dangers ahead: (1) Leikvoll, standing on the east shoulder of the northbound lane 400 feet south of the accident scene and about 10 feet in front of a pickup truck parked on the same shoulder, waving a flare and a flashlight; (2) the truck parked on the east shoulder near Leikvoll, facing north with rear taillights flashing; (3) a warning shouted by Leikvoll; (4) a flashing red light atop Leikvoll's wrecker parked in the crossover; (5) flagman standing just in front of the disabled Bounds vehicle; and (6) any of the panorama on the highway ahead of him.

These facts, they insist, demonstrate that Cech's failure to slacken his speed of 50 to 55 miles per hour until only a few feet from Traphagan's car was such gross negligence as to be the intervening and sole cause of plaintiff's injuries. Defendants urge us to recognize Sims v. Hallett Const. Co. 247 Minn. 339, 77 N. W. (2d) 54, and Medved v. Doolittle, 220 Minn. 352, 19 N. W. (2d) 788, as controlling. We cannot agree.

In Sims, three vehicles were traveling in a westerly direction along Highway No. 10 with plaintiff driving the middle automobile and one of the defendants, the last. All three were proceeding at about 40 miles per hour and were properly spaced to allow stopping without collision. The day was clear and the pavement dry. As the three-vehicle procession entered a construction zone, the lead vehicle was suddenly stopped by a flagman who had positioned himself on the shoulder of the westbound lane. Plaintiff's vehicle, next in line, was able to stop behind the first vehicle without incident. Then defendant, at a point about a block and a half from plaintiff, looked to the flagman and noticed that he made some

motion which defendant understood as a "proceed signal." He therefore put his foot on the accelerator; then, noting plaintiff's vehicle some 60 feet ahead of him, attempted to stop but collided with plaintiff at a speed of about 30 or 40 miles per hour. In a suit against defendant and the flagman, we held that the negligence of defendant driver was superseding and therefore the sole cause of plaintiff's injuries.

In Medved, defendant's truck was stalled on the eastbound shoulder of a three-lane highway (each lane 9 feet wide). The truck remained on the paved road surface, leaving about an 18-foot clear and unobstructed strip of highway. The truck had been in that position about 16 hours, during which time an estimated 500 cars passed safely. During broad daylight hours, a car driven by the other defendant was proceeding at about 38 miles per hour in an easterly direction, with his wife (plaintiff) seated beside him. Defendant first saw the stalled truck blocking a part of his lane when he was about a quarter of a mile away and continued to see it until, when only about 150 feet away, he looked sideways to his wife. He then collided with the truck. We held that the negligence of defendant-driver was a superseding cause of plaintiff's injuries, thereby insulating defendant-trucker from liability to plaintiff.

Analysis of these cases convinces us that defendants' heavy reliance on them is inapposite in the instant case. In both cases the factor of darkness was conspicuously absent, and the drivers saw the danger ahead in ample time but misjudged it. In Sims, the driver saw the flagman and was aware of the stopping vehicles ahead but thought the flag signal meant go, not stop. In Medved, the disabled vehicle was in plain view for a considerable distance, but defendant thought it was moving, not stopped. Thus, both defendants had full and actual knowledge of the hazard before them but failed to respond properly.

In distinction, the evidence permits a finding that Cech never had actual knowledge of the impending dangers. Cech never saw Leikvoll with his flare or the truck standing nearby because, as the jury could well have found, his view was blocked by a car in the right lane that he was passing at that same moment he passed Leikvoll.[1] Similarly, it is

---

[1] "Q.  At the time the Cech car was opposite where you were standing on the shoulder, where was the car it was passing?

conceivable (and the jury could have found) that the warning shouted by Leikvoll was inaudible inside Cech's closed car.[2] The jury could also agree that Traphagan, with no flare or flashlight, standing in the middle of the road next to Bounds' vehicle directing traffic, was difficult if not impossible to see in the darkness by the oncoming Cech.[3] There is left, then, only the blinking red dome light on the wrecker standing in the crossover. Cech saw the flashing light about a half a mile away off to the left in the crossover but "thought it was was possibly a patrol car that probably pulled a car over out of Little Falls." We cannot second-guess and say either that the jury was patently misled in concluding that the presence of the wrecker's dome light was ambiguous and inadequate as a signal of the danger that lay about 15 feet to the east of it or that Cech's judgment was so unreasonable that as a matter of law his conduct was gross negligence and therefore a superseding, intervening cause of plaintiff's injuries. We have said:

"For defendant it is argued that negligence of Wild in not avoiding the collision was an intervening and sole cause of the injury to [plaintiff]. Assuming negligence on the part of Wild, it was at least a question of fact whether it was concurrent with that of defendant rather than so independent of it as to be an intervening cause. Clearly, on the evidence, the question was for the jury."[4]

---

"A.  [Leikvoll] That was alongside of me.

* * * * *

"Q.  So as the Cech car went by you in the inside lane, between you and the Cech car was this other car?
"A.  Yes.
"Q.  The two cars went by you parallel, is that right?
"A.  Yes."

[2] It was about 30 degrees below zero and thus unlikely that Cech had any windows open. It is also reasonable to suppose a heater was going, adding to the noise within the car.

[3] It is significant to note that upon Leikvoll's shouted warning, Traphagan jumped back to protect himself from Cech's car, thus, it would seem, making it more difficult for Cech to see him.

[4] Duff v. Bemidji Motor Service Co. 210 Minn. 456, 458, 299 N. W. 196, 197.

The question of whether Cech's negligence was a superseding cause because he should have seen the hazard ahead we believe is debatable under the view most favorable to him. Thus, we cannot say as a matter of law that the jury arrived at an unreasonable and unsupported conclusion.

■ Leikvoll's conduct stands apart from the other defendants, for the jury found him free of negligence in causing the first accident but negligent in the second and therefore liable to plaintiff. It is Leikvoll's contention either that the verdict is perverse or that the jury mistakenly found that, following the first accident, Leikvoll breached a duty to plaintiff. Under the law of the case, Leikvoll participated in "creating a dangerous situation on a highway" and it is therefore clear that the verdict is not perverse. We need consider, therefore, only Leikvoll's alternative argument.

Leikvoll principally asserts that following the first accident his position was that of a volunteer and his conduct must be evaluated in terms of the standard of care required of one acting in an emergency in aid of others. Thus, he argues, unless his conduct affirmatively increased the danger to plaintiff, he is not liable.

On appeal, however, we cannot consider Leikvoll's theory that he was a volunteer. No such theory was asserted at trial or pleaded as a defense; no instruction was requested to that effect; and no objections or exceptions were taken to the court's instructions which included no mention of the duties and status of a volunteer. Further, it is not apparent that on this appeal Leikvoll is assigning as error [5] the trial court's failure to apply a correct standard of care to his conduct. Rule 49.01, Rules of Civil Procedure, provides:

"* * * The court shall give to the jury such explanations and instructions concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence,

---

[5] Supreme Court Rule VIII(3)(e), (222 Minn. xxxiv) provides: "Errors assigned shall be *separately and concisely stated* and numbered, without repetition, and where a finding of fact is attacked as not sustained by the evidence, it shall be particularly specified." (Italics supplied.)

each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand, the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict."

We must, therefore, consider Leikvoll's liability by the law of the case as set out in the trial court's charge, although, even assuming Leikvoll had preserved his right to raise the question, we doubt that the evidence would support his claim that he was a volunteer.[6]

The court's charge included the following instruction:

"If a person creates or participates in creating a dangerous situation on a highway, he is under a common law duty to use reasonable care to remove or correct the situation to the extent that that is reasonably feasible or possible, and to use reasonable care to warn others of the danger while the danger exists."

We believe, and find support for the proposition,[7] that one's participation in the creation of a hazard need not be negligent for the duty of care to arise. Though not negligent, it is clear that Leikvoll was a participant in the creation of the first accident when, in performing a contract to start Traphagan's car, the latter became involved in a collision. A duty then fell upon Leikvoll, not as a volunteer but as one called upon to exercise reasonable care, either to remove the hazard or give adequate warning to others. We find sufficient support in the record upon which the jury could conclude that Leikvoll negligently breached that duty. He made no attempt to coordinate plans with Traphagan and Bounds for handling the emergency when he went to check their condition; he failed to illuminate the scene of the accident by shining the headlights of his

---

[6] Rather, the evidence would support, if not compel, a finding that Leikvoll and Traphagan were joint venturers, each having a voice in their mutual efforts to start the Pontiac. Traphagan's negligence would thus be imputed to Leikvoll. Murphy v. Keating, 204 Minn. 269, 283 N. W. 389.

[7] Prosser, Torts (3 ed.) § 54, p. 338; Montgomery v. National Convoy & Trucking Co. 186 S. C. 167, 195 S. E. 247; Hardy v. Brooks, 103 Ga. App. 124, 118 S. E. (2d) 492.

truck on the Bounds vehicle;[8] he neither put a fusee he had in his truck to use nor employed his wrecker in any other way to attempt to push or pull the Bounds vehicle off the highway. When he went up the road to flag on-coming cars, he failed to supply Traphagan or Bounds with his flashlight or the flare from his truck or one of several flares which Simmons had in his trunk, thereby leaving Bounds and Traphagan to direct traffic in the dark. He positioned himself on the east shoulder, where a pickup truck already was standing, and did not place a flare on the blacktop surface of the road. Finally, the jury might have found that by activating the red dome light on his wrecker he only added a confusing or distracting circumstance to the already acutely dangerous situation. Overall, the jury may well have weighed what Leikvoll failed to do against what he did, in light of Cech's testimony. The latter's testimony would permit the jury to find that, as Cech approached the hazard, his failure to exercise due care was contributed to by the defendant's ineffective warning of existing danger.

From all of the foregoing, we are not warranted in concluding that the jury's finding of negligence on the part of Leikvoll was so mani-festly contrary to the evidence as to require reversal or a new trial.

The balance of the issues raised on this appeal appear to us to be so wholly lacking in merit as to warrant little discussion. Defendant Bounds charges as error certain instructions of the court to the jury, yet at no time did he or any other defendant raise an objection or in any way direct the court's attention to possible errors or omissions in the charge. Any error which might have been made is, therefore, waived. Bounds also asserts as error the court's denial of his right to impeach his own witness. By way of impeachment, Bounds sought to introduce a statement signed and sworn to by the witness in question. We have ex-amined that statement and find that it would add nothing to the jury's understanding of the case. Even assuming error on the part of the trial court, we cannot find that it is prejudicial.

Bounds makes the further contention that he breached no legal duty

---

[8] A police officer, arriving on the scene just as the second accident oc-curred, immediately positioned his vehicle to illuminate the scene by its headlights.

to the plaintiff because it was unforeseeable that Bounds' negligence in contributing to the first accident would ultimately result in injury to the plaintiff. Bounds also claims that following the first accident he was physically unable to do anything to protect against further damage. We find no merit in these contentions. The jury had before them the question, specifically framed, whether Bounds' negligence was the proximate cause of plaintiff's injuries, and answered in the affirmative. We find ample support for their conclusion. Bounds, in negligently creating a hazard on the highway, could reasonably foresee the risk of further damage from an oncoming car unable to see the hazard in the darkness. It also seems reasonable to foresee the presence near and around the accident scene of Samaritans coming to the aid of the injured. These two elements occurring concomitantly (the oncoming car and volunteer) could foreseeably result in the very accident that took place. The jury undoubtedly found, therefore, that Bounds negligently put in motion a sequence of events that logically led to plaintiff's injuries.[9] It is equally clear that, having negligently created a dangerous situation, Bounds was under a duty (like Leikvoll) to exercise care to remove the danger or give warning. We cannot say that the jury would be unwarranted in finding that Bounds breached that duty.

■ Finally, both Bounds and Leikvoll claim that as a matter of law plaintiff was contributorily negligent. Whether he was is again a question of fact, and the jury's finding that he was not is supported by sufficient evidence.

Affirmed.

OTIS, JUSTICE (dissenting).

I respectfully dissent from that part of the opinion holding that the evidence supports a finding Leikvoll was negligent in the action he took to prevent a second accident following the initial collision.

Bearing in mind that Leikvoll was completely exonerated with respect to the first collision, in my opinion it is a gross miscarriage of justice to impose liability on him for the decisions which he had to make and

---

[9] See, Arnold v. Northern States Power Co. 209 Minn. 551, 297 N. W. 182.

implement within a period of 4 or 5 minutes. It is one thing to determine from the vantage of hindsight that as matters developed other measures might have been more effective. It is another to judge Leikvoll's conduct in the light of the exigencies and emergencies which he felt bound to cope with in the course of a very few moments. Reviewing the action which Leikvoll did take, it occurs to me that he behaved with singular dispatch and efficiency and covered a great deal of territory in a very short period of time.

Following the initial collision, Leikvoll took the following action: He immediately checked with Traphagan and Bounds to determine their physical condition, returned to his wrecker which was parked well off the traveled portion of the highway, secured a flashlight, crossed the highway and directed Rodekuhr to call the highway patrol, determined that Simmons had flares available, returned to his truck and activated the red flashers on top of the vehicle and on each side, hurried down the highway 400 feet with a lighted flare in one hand and a flashlight in the other, posted himself 10 feet in front of a lighted pickup truck whose clearance lights and rear lights were flashing, slowed down oncoming cars with his flare and flashlight, and, upon seeing Cech, shouted so loud that he was heard some 900 feet from where he stood. To hold, as the majority opinion suggests, that a jury could find him liable for activating his red flasher lights, which Cech admits he saw a half mile away, is expounding a rule which, in my opinion, defies all logic. It occurs to me that although Leikvoll acted with remarkable presence, under the ruling adopted today he would have been no worse off and perhaps better advised to have simply taken his wrecker and departed from the scene without assuming any responsibility. If he is to be held liable in this case, it is difficult to imagine any situation in which a driver involved without fault in an accident is safe in taking measures to warn oncoming vehicles.

For the reasons stated I would hold the evidence does not support a finding that Leikvoll was negligent.