**Jeffrey J. HARPER, Respondent,**

v.

**Theodor H. HERMAN, Petitioner, Appellant.**

**No. C0–92–196.**

Supreme Court of Minnesota.

May 7, 1993.

Dept., *Charitable Gambling in Minnesota* 9 (rev.   ed. Oct. 1989).

 

## OPINION

PAGE, Justice.

This case arises upon a reversal by the court of appeals of summary judgment in favor of the defendant. The court of appeals held that defendant, the owner and operator of a private boat on Lake Minnetonka, had a duty to warn plaintiff, a guest on the boat, that water surrounding the boat was too shallow for diving. We reverse and reinstate judgment in favor of defendant.

The facts are undisputed for the purpose of this appeal. On Sunday, August 9, 1986, Jeffrey Harper ("Harper") was one of four guests on Theodor Herman's ("Herman") 26–foot boat, sailing on Lake Minnetonka. Harper was invited on the boat outing by Cindy Alberg Palmer, another guest on Herman's boat. Herman and Harper did not know each other prior to this boat outing. At the time Herman was 64 years old, and Harper was 20 years old. Herman was an experienced boat owner having spent hundreds of hours operating boats on Lake Minnetonka similar to the one involved in this action. As owner of the boat, Herman considered himself to be in charge of the boat and his passengers. Harper had some experience swimming in lakes and rivers, but had no formal training in diving.

After a few hours of boating, the group decided to go swimming and, at Herman's suggestion, went to Big Island, a popular recreation spot. Herman was familiar with Big Island, and he was aware that the water remains shallow for a good distance away from its shore. Harper had been to Big Island on one previous occasion. Herman positioned the boat somewhere between 100 to 200 yards from the island with the bow facing away from the island in an area shallow enough for his guests to use the boat ladder to enter the water, but still deep enough so they could swim.[1] The bottom of the lake was not visible from the

Gene P. Bradt, Hansen, Dordell, Bradt, Odlaug & Bradt, St. Paul, for appellant.

Sharon L. VanDyck, Michael A. Zimmer, Schwebel, Goetz, Sieben & Moskal, Minneapolis, for respondent.

---

1. Herman disputes that the boat was this far from shore, but for purposes of this appeal stipulates to Harper's allegation.

boat. After positioning the boat Herman proceeded to set the anchor and lower the boat's ladder which was at its stern.

While Herman was lowering the ladder, Harper asked him if he was "going in." When Herman responded yes, Harper, without warning, stepped onto the side of the middle of the boat and dove into approximately two or three feet of water. As a result of the dive, Harper struck the bottom of the lake, severed his spinal cord, and was rendered a C6 quadriplegic.

Harper then brought suit, alleging that Herman owed him a duty of care to warn him that the water was too shallow for diving. On October 23, 1991, the trial court granted Herman's motion for summary judgment, ruling that the law does not impose such a duty. In reversing the trial court, the court of appeals concluded that Herman voluntarily assumed a duty to exercise reasonable care when he allowed Harper onto his boat, and that the duty of care included warning Harper not to dive because he knew that the water was "dangerously shallow." *Harper v. Herman*, 487 N.W.2d 908, 910 (Minn.App.1992).

The sole issue on appeal is whether a boat owner who is a social host owes a duty of care to warn a guest on the boat that the water is too shallow for diving.

Harper alleges that Herman owed him a duty to warn of the shallowness of the water because he was an inexperienced swimmer and diver, whereas Herman was a veteran boater. Under those circumstances, Harper argues, Herman should have realized that Harper needed his protection.

■ We have previously stated that an affirmative duty to act only arises when a special relationship exists between the parties. "The fact that an actor realizes or should realize that action on his part is

necessary for another's aid or protection does not of itself impose upon him a duty to take such action * * * unless a special relationship exists * * * between the actor and the other which gives the other the right to protection." *Delgado v. Lohmar*, 289 N.W.2d 479, 483 (Minn.1979), *reh'g denied*, Jan. 11, 1980 (citations omitted). Accepting, *arguendo*, that Herman should have realized that Harper needed protection, Harper must still prove that a special relationship existed between them that placed an affirmative duty to act on the part of Herman.

■ Harper argues that a special relationship requiring Herman to act for his protection was created when Herman, as a social host, allowed an inexperienced diver on his boat. Generally, a special relationship giving rise to a duty to warn is only found on the part of common carriers, innkeepers, possessors of land who hold it open to the public, and persons who have custody of another person under circumstances in which that other person is deprived of normal opportunities of self-protection. Restatement (Second) of Torts § 314A (1965). Under this rule, a special relationship could be found to exist between the parties only if Herman had custody of Harper under circumstances in which Harper was deprived of normal opportunities to protect himself.[2] These elements are not present here.

The record before this court does not establish that Harper was either particularly vulnerable or that he lacked the ability to protect himself. Further, the record does not establish that Herman held considerable power over Harper's welfare, or that Herman was receiving a financial gain by hosting Harper on his boat. Finally, there is nothing in the record which would suggest that Harper expected any protec-

---

**2.** Prosser describes a circumstance in which one party would be liable in negligence because another party was deprived of normal opportunities for self-protection as occurring when

> the plaintiff is typically in some respect particularly vulnerable and dependent upon the defendant who, correspondingly, holds considerable power over the plaintiff's welfare. In addition, such relations have often in-

volved some existing or potential economic advantage to the defendant. Fairness in such cases thus may require the defendant to use his power to help the plaintiff, based upon the plaintiff's expectation of protection, which itself may be based upon the defendant's expectation of financial gain.

W. Page Keeton et al., *Prosser and Keeton on the Laws of Torts* § 56, at 374 (5th ed. 1984).

tion from Herman; indeed, no such allegation has been made.

 The court of appeals found that Herman owed Harper a duty to warn him of the shallowness of the water because Herman knew that it was "dangerously shallow." We have previously stated that "[a]ctual knowledge of a dangerous condition tends to impose a special duty to do something about that condition." *Andrade v. Ellefson*, 391 N.W.2d 836, 841 (Minn. 1986) (holding that county was not immune to charge of improper supervision of day care center where children were abused when county knew about overcrowding at the center). However, superior knowledge of a dangerous condition by itself, in the absence of a duty to provide protection, is insufficient to establish liability in negligence. Thus, Herman's knowledge that the water was "dangerously shallow" without more does not create liability. *Andrade* involved a group of plaintiffs who had little opportunity to protect themselves, children in day care, and a defendant to whom the plaintiffs looked for protection. In this case, Harper was not deprived of opportunities to protect himself, and Herman was not expected to provide protection.

"There are many dangers, such as those of fire and water, * * * which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child * * *." Restatement (Second) of Torts § 339 cmt. j (1965). If a child is expected to understand the inherent dangers of water, so should a 20–year–old adult. Harper had no reasonable expectation to look to Herman for protection, and we hold that Herman had no duty to warn Harper that the water was shallow.

Reversed and judgment in favor of defendant reinstated.