Bradley J. DOMAGALA, Appellant,

v.

Eric ROLLAND, et al., Respondents.

No. A09–1945.

Court of Appeals of Minnesota.

Aug. 31, 2010.

Thomas J. Weidner, Kevin S. Sandstrom, Eckberg, Lammers, Briggs, Wolff & Vierling, P.L.L.P., Stillwater, MN, for appellant.

David E. Camarotto, Bassford Remele, P.A., Minneapolis, MN, for respondents.

Considered and decided by CONNOLLY, Presiding Judge; STONEBURNER, Judge; and SCHELLHAS, Judge.

## OPINION

CONNOLLY, Judge.

On appeal from the district court's denial of a motion for a new trial, appellant argues that the district court erred when it (1) concluded there was no duty to warn appellant as a matter of law, and (2) improperly used "negative" jury instructions, which unduly emphasized respondents' case and confused the jury. Because the district court correctly concluded there was no special relationship giving rise to a duty to warn, we affirm in part. But because the district court abused its discretion by giving the negative instructions, which confounded the standard of care owed to appellant, overemphasized respondent's case and confused the jury, we reverse in part and remand for a new trial.

## FACTS

Respondent Eric Rolland owns respondent Rolland Building Corporation, a Wisconsin construction company that designs and builds residential and commercial properties and performs remodeling services. Rolland and his corporation are collectively referred to herein as "respondent." Appellant Bradley Domagala is married to respondent's cousin. Appellant and his wife asked respondent to perform some grading work around their home. Their yard had a "rough grade" and respondent was "going to do a finished grade, which means preparing for sod or seed." The project was expected to take approximately six hours.

On June 23, 2003, respondent brought his New Holland LX985 skid loader over to appellant's home to work on the yard. Respondent also brought the corresponding forks; the leveling, or sod, bar; and the bucket attachments. Throughout the course of the project, respondent operated the skid loader while appellant watched and picked up rocks and debris from the yard. Respondent did not ask appellant to help him in any way. The machine was noisy and respondent wore ear protection. When appellant wanted to speak with respondent, he would approach the skid loader with his hands up, palms out, and respondent would then put his hands up in the air, indicating that his hands were away from the controls.

The skid loader's attachments needed to be switched out on several occasions during the project. In order to change an attachment, respondent would first take off his seatbelt, go out through the front, walk over the bucket, and face the skid loader. Respondent would then pull up on the levers one at a time and the attach-

ment would be released. Next, respondent would go back into the skid loader, put back on his seatbelt, back up, and then pull up to the desired attachment. Finally, respondent would hook up the hydraulics and saddles; check to make sure everything was set right; and again get out of the skid loader, face the machine, pull the levers down, and latch them in. Afterwards, respondent would get back in the skid loader, lift the boom slightly, and check to make sure the pins were through the receivers.

It was common for dirt and other debris, such as rocks, to get lodged in the levers. When this occurred, respondent would detach the handle or pin that would release; raise the attachment a couple of inches off the ground; and "flutter the hydraulics to shake" the attachment. This would "create[ ] extra play," loosening whatever was stuck in the other lever. Approximately three-quarters of the way through the project, roughly two hours in, respondent needed to remove the skid loader's bucket and attach the leveling bar. A piece of debris was stuck in one of the levers. Respondent released one of the levers and began "fluttering the bucket vertically." Respondent described this as a very dangerous situation because the skid loader's bucket was in the air, hanging by a single pin.

Respondent then became aware that appellant was coming straight at him. Appellant could see that there was a stone stuck in one of the levers. Respondent took his hands off the controls and raised them up. The bucket was approximately 10–20 inches off of the ground. Before respondent could say anything to appellant, appellant reached up and grabbed the lever, releasing the bucket. Appellant did not recall giving "any indication that [he] was going to release the lever." The cutting edge of the bucket was pointed towards the ground, and landed directly on appellant's left foot. As a result, three of appellant's toes were crushed and eventually amputated.

Appellant sued respondent, alleging that respondent negligently and carelessly operated the skid loader and failed to warn him of the dangers associated with trying to unlatch the skid loader's bucket. Respondent moved for summary judgment, asserting that there was no special relationship between the parties giving rise to a duty to protect or a duty to warn. The district court denied the motion for summary judgment, concluding that respondent "owed a duty of care to act in a reasonable manner" when operating the skid loader and that respondent "created a dangerous situation when [respondent] elevated the bucket attachment while it was attached to the machinery by only one lever; thus, creating a duty of care owed to [appellant]." However, the district court concluded as a matter of law that no special relationship existed between the parties giving rise to a duty to protect or a duty to warn. The case proceeded to a jury trial.

Among other instructions, respondent requested two special jury instructions in light of the district court's summary-judgment order. The first stated that respondent had no duty to protect appellant:

A person generally has no duty to act for the protection of another person. A legal duty to protect will be found to exist only if there is a special relationship between the parties and the risk is foreseeable. The Court has ruled, as a matter of law, that no duty to protect exists in this matter and you must not consider such a duty in your deliberation in this case.

The second stated that respondent had no duty to warn appellant.

A special relationship giving rise to a duty to warn is only found on the part of common carriers, innkeepers, possessors of land who hold it open to the public, and persons who have custody of another person under circumstances in which that other person is deprived of normal opportunities of self-protection. The Court has ruled, as a matter of law, that no duty to warn exists in this matter and you must not consider such a duty in your deliberation in this case.

Appellant objected to the proposed instructions, asserting that while

[i]t is undisputed that there is no special relationship between the parties that would require a heightened Duty to Protect or a heightened Duty to Warn[,] . . . [i]t is feasible that the jury might find that the duty of reasonable care included a warning in order to protect [appellant] from the dangerous situation created by [respondent].

Appellant also argued that these instructions may be confusing to the jury and, because the district court already found that such duties did not exist, these instructions should not be part of the charge to the jury. The district court stated it would give both of the requested instructions, but also acknowledged that appellant was not foreclosed from arguing that a reasonable person would have warned appellant.

Respondent also brought a motion requesting that, if appellant's counsel attempted to refer to either a duty to warn or a duty to protect in the presentation of his case, the district court would provide a curative instruction. The district court denied this motion, but stated that it entertained the possibility of rereading the requested no-duty-to-warn instruction if the court believed "the line ha[d] been crossed."

At the close of the evidence, the district court read the instructions to the jury, including the no-duty-to-protect and no-duty-to-warn instructions requested by respondent, and the following special instruction requested by appellant regarding the duty of care owed based on the creation of a dangerous situation:

If a person created an unreasonable risk of causing physical harm to another, that person has a duty to exercise reasonable care to prevent the risk from taking effect. This duty applies even though at the time of the creation of the unreasonable risk, the person had no reason to believe that it will involve such a risk.

After counsel made closing arguments, the district court repeated (1) respondent's no-duty-to-warn instruction; (2) appellant's dangerous-situation instruction; and (3) the standard definitions of "reasonable care" and "negligence." *See* 4 *Minnesota Practice*, CIVJIG 25.10 (2006) (defining "reasonable care" and "negligence"). The jury subsequently found that respondent was not negligent in the operation of the skid loader and that appellant acted negligently at the time of the incident.[1] Appellant moved for a new trial based on the district court's inclusion of the no-duty-to-warn and no-duty-to-protect instructions to the jury. The district court denied appellant's motion. This appeal follows.

## ISSUES

I. Did the district court err by concluding that respondent had no duty to warn appellant as a matter of law?

---

1. The jury was permitted to render a six-out-of-seven majority verdict after it had deliberated for six hours. *See* Minn.Stat. § 546.17 (2008) (allowing the jury to return a verdict "upon an agreement by five-sixths of its number" after six hours of deliberation).

II. Did the district court abuse its discretion in giving the jury respondent's no-duty-to-warn and no-duty-to-protect instructions?

## ANALYSIS

### I.

Because the district court's determination that respondent did not have a specific, legal duty to warn appellant of dangers associated with the skid loader was the basis for the no-duty-to-warn and no-duty-to-protect instructions to the jury, we begin by discussing whether the district court erred by concluding that respondent had no duty to warn appellant. The existence of a legal duty is a question of law, which this court reviews de novo. *Bjerke v. Johnson*, 742 N.W.2d 660, 664 (Minn. 2007).

### A. Special Relationship

■ "Generally, no duty is imposed on an individual to protect another from harm...." *Id.* at 665. "[A]n affirmative duty to act only arises when a special relationship exists between the parties." *Harper v. Herman*, 499 N.W.2d 472, 474 (Minn.1993).

> "The fact that an actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action ... unless a special relationship exists ... between the actor and the other which gives the other the right to protection."

*Id.* (quoting *Delgado v. Lohmar*, 289 N.W.2d 479, 483 (Minn.1979) (alteration in original)). As the district court correctly pointed out, the duty to warn is predicated upon the finding of a special relationship between the parties. *Harper*, 499 N.W.2d at 474.

■ A special relationship can exist "under any one of three distinct scenarios." *Bjerke*, 742 N.W.2d at 665. First, "special relationships exist between parents and children, masters and servants, possessors of land and licensees, common carriers and their customers, or people who have custody of a person with dangerous propensities." *Delgado*, 289 N.W.2d at 483–84. Second, they arise when a person has "custody of another person under circumstances in which that other person is deprived of normal opportunities of self-protection." *Harper*, 499 N.W.2d at 474. Third, a special relationship "arises when an individual assumes responsibility for a duty that is owed by another individual to a third party." *Bjerke*, 742 N.W.2d at 665.

Appellant does not appear to challenge the district court's finding that there was no special relationship between the parties and does not appear to assert that such a relationship exists. In fact, appellant expressly states in his reply brief that he "fully admits that a 'special relationship' is not at issue, but that does not relieve Respondent's duty of care to act in this circumstance and *prevent the harm from occurring.*" Appellant goes on to say that "[a]lthough no special relationship existed that would have created a special duty to protect or a special duty to warn, a general duty of ordinary reasonable care did exist." The specific legal duty to warn only arises out of a special relationship. We conclude, as the district court did, that "[t]here remains no assertion that a special relationship exists between the parties in this case that would give rise to a duty to affirmatively act."

### B. Products Liability

■ Appellant likewise contends that "this matter is similarly analogous to a product liability action." We disagree.

Appellant is correct in that manufacturers, suppliers, and others within the distribution chain "ha[ve] a duty to warn the user of any foreseeable dangers associated with the product's intended or foreseeable uses." *See Marcon v. Kmart Corp.*, 573 N.W.2d 728, 732 (Minn.App.1998) ("When a manufacturer or seller knows, or should anticipate, that a product might be used in a manner that will increase the risk of injury, and the risk is not one normally comprehended by the user, there is a duty to warn."), *review denied* (Minn. Apr. 14, 1998). But, as respondent points out, Minnesota law is clear that products-liability theory "applies only to those in the business of selling"; "[t]he defendant must be a product seller or distributor." 4A *Minnesota Practice* CIVJIG Cat. 75 (2006).

Appellant asserts that respondent created a "dangerous 'product'" by allowing the bucket to hang by one pin. But as the district court pointed out, "[t]here is no assertion that [respondent is a] manufacturer[], [a] supplier[], or another entity within the product distribution line. Evidence merely suggests that [respondent is] the owner and operator of the skid loader." Moreover, as noted by respondent, it does not appear that appellant has asserted a claim against the manufacturer or supplier of the skid loader or asserted that a defect was present in the skid loader itself.

Because appellant identifies no special relationship, and in fact concedes the lack thereof, and because respondent did not owe a duty to warn under products-liability principles, the district court properly concluded that respondent did not have a specific legal duty to warn appellant of any dangers associated with the skid loader, and we affirm in part.

## II.

We next turn to the no-duty-to-protect and no-duty-to-warn jury instructions. "The district court has broad discretion in determining jury instructions and [appellate courts] will not reverse in the absence of abuse of discretion." *Hilligoss v. Cargill, Inc.*, 649 N.W.2d 142, 147 (Minn.2002). "Where instructions overall fairly and correctly state the applicable law, appellant is not entitled to a new trial." *Id.* But "[a] [district] court, through its instruction, is not authorized to give prominence to and emphasize particular facts disclosed by the evidence, thus singling out elements or views upon the controversy which were proper for argument and discussion by counsel." *Barnes v. Nw. Airlines, Inc.*, 233 Minn. 410, 420, 47 N.W.2d 180, 187 (1951). When considering the district court's charge to the jury, it "must be construed as a whole" and "may not be attacked successfully by lifting a single sentence or even a paragraph from its context." *Zurko v. Gilquist*, 241 Minn. 1, 4, 62 N.W.2d 351, 354 (1954). If, as a whole, the district court's instructions to the jury provide "an erroneous conception of the controlling principles of law, then [they] cannot be defended and found sufficient as a whole by a careful analysis of the technical relations of [their] various provisions to each other when such technical relationships would not reasonably have been apparent to the jury." *Id.* at 5, 62 N.W.2d at 354. "If an erroneous jury instruction destroys the substantial correctness of the charge, causes a miscarriage of justice, or results in substantial prejudice, a new trial is warranted." *Youngquist v. W. Nat'l Mut. Ins. Co.*, 716 N.W.2d 383, 386 (Minn.App.2006) (citing *Lindstrom v. Yellow Taxi Co.*, 298 Minn. 224, 229, 214 N.W.2d 672, 676 (1974)).

As discussed above, appellant and respondent did not have the requisite special relationship giving rise to a duty to warn,

and, therefore, the no-duty-to-warn instruction did not misstate the law. *See Harper*, 499 N.W.2d at 474 (requiring a special relationship between the parties before imposing an affirmative duty to act). Likewise, because the duty to protect, which gives rise to the duty to warn, is also premised on the existence of a special relationship not present in this case, the no-duty-to-protect instruction also did not misstate the law. *See Delgado*, 289 N.W.2d at 483 (stating that the "fact that an actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action" and noting no general "duty to control the conduct of a third person to prevent him from causing physical harm to another unless a special relationship exists").

Appellant challenges the no-duty-to-warn and no-duty-to-protect instructions based on their overall effect, arguing that the (1) use of negative jury instructions was inappropriate; (2) use of generalized instructions is preferred to specific instructions; and (3) use of the requested instructions unduly emphasized respondent's case and confused the jury. Respondent asserts that (1) the instructions provided an accurate statement of Minnesota law; (2) their negative posture did not affect the instructions' appropriateness; (3) the instructions were necessary given appellant's argument that the duty of reasonable care may include warning appellant; and (4) the instructions did not confuse the jury.

We begin with the district court's decision to use the special instructions drafted by the parties. Minnesota caselaw appears split on the issue of generalized jury instructions versus special instructions. *Compare Fallin v. Maplewood–N. St. Paul Dist. No. 622*, 362 N.W.2d 318, 322 (Minn. 1985) ("[T]his court prefers a general in-

struction where practical, in order to avoid overemphasis in favor of a party, or jury confusion."), *with Clark v. Miller*, 378 N.W.2d 838, 846 (Minn.App.1986) ("If it is plain that a more specific instruction will better enable the jury to intelligently determine the question, the trial court should observe the party's request."), *review denied* (Minn. Mar. 14, 1986); *see also* 23 Ronald I. Meshbesher, *Minnesota Practice* § 37.2 (2009–10 ed.) (noting inconsistency in the caselaw "as to specificity versus generality" in jury instructions). The key, however, is that the instructions be given in such a way that will best enable the jury to understand the issues in the case. *See* Minn. R. Civ. P. 49.01(a) ("The court shall give to the jury such explanations and instructions concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue."); *Barnes*, 233 Minn. at 421, 47 N.W.2d at 187 ("All that is required in the way of instructions is that the charge as a whole convey to the jury a clear and correct understanding of the law of the case."). As appellant correctly points out, there are no standard instructions for the absence of a duty to warn or protect. But, given the district court's broad discretion in choosing the language of jury instructions, the no-duty-to-warn and no-duty-to-protect instructions were not an abuse of the district court's discretion per se because respondent did not owe a *specific* duty to warn or protect appellant in this case.

■■■■■ As to the negative posture of the jury instructions, appellant correctly states that it is generally preferable that jury instructions affirmatively state the applicable law. *Schlieman v. Gannett Minn. Broad., Inc.*, 637 N.W.2d 297, 302 (Minn. App.2001) ("In general a jury charge should affirmatively set forth the law that applies and avoid the express exclusion of

a nonapplicable principle of law." (citing *Nubbe v. Hardy Cont'l Hotel Sys.,* 225 Minn. 496, 502–03, 31 N.W.2d 332, 336 (1948))). In *Hernandez v. Renville Public School District No. 654,* the plaintiff challenged the final sentence of the district court's instruction on the standard of care applicable to a preschool employee in supervising a child who fell from the monkey bars:

> Tri–Valley and its teachers had an obligation to use ordinary care to protect its students from injuries which could reasonably have been foreseen and could have been prevented by the use of ordinary care. *However, there is no requirement of constant supervision of all of the movement of all pupils at all times.*

542 N.W.2d 671, 673 (Minn.App.1996) (emphasis added), *review denied* (Minn. Mar. 28, 1996). Although we observed that "[t]he better practice may be to instruct the jury that the school must exercise ordinary care to protect students from foreseeable injuries," we ultimately concluded a new trial was not warranted because the challenged instruction "fairly and correctly state[d] the law." *Id.* at 674. Notably, the Minnesota Supreme Court has observed that, in some cases, negative instructions can help to clarify the issues for the jury. *See Nubbe,* 225 Minn. at 502, 31 N.W.2d at 336 ("Although defendant's request [in a premises-liability case for an instruction that it was 'not an insurer of the safety' of the premises] was entirely proper, and if granted, would by contrast have reasonably contributed to the clarity of the charge, we cannot say that the trial court's refusal so to instruct was erroneous or prejudicial."). Thus, the mere fact that the instructions were framed in the negative does not necessarily reflect an abuse of the district court's discretion either as they did not misstate the law. *See Hernandez,* 542 N.W.2d at 674.

However, the jury instructions must ultimately be considered as a whole and reviewed to determine whether "they misstate or confuse a principle of law applicable to the case." *Schlieman,* 637 N.W.2d at 302. "[W]e will reverse and remand for a new trial when a jury instruction conveys an erroneous understanding of controlling principles of law." *Stewart v. Koenig,* 767 N.W.2d 497, 499 (Minn.App.2009) (quotation omitted). In this unique case, we agree with appellant that the jury instructions were self-conflicting, overemphasized respondent's legal theory, and gave the jury an erroneous impression of the law.

"Negligence is a departure from a standard of conduct required by the law for the protection of others against unreasonable risk of harm." *Blatz v. Allina Health Sys.,* 622 N.W.2d 376, 383 (Minn.App.2001) (quotation omitted). "An ordinary person has a duty to do what a reasonable person would do under the same or similar circumstances." *Id.* at 384. The district court found that respondent owed appellant a duty of reasonable care when respondent was operating the skid loader. This does not appear to be disputed on appeal. The district court subsequently instructed the jury on the definitions of negligence and reasonable care using language identical to CIVJIG 25.10, stating that reasonable care is "the care a reasonable person would use in the same or similar circumstances" and negligence is "the failure to use reasonable care." Likewise, as stated in CIVJIG 25.10, the district court told the jurors to ask themselves "what a reasonable person would have done in these circumstances" and that negligence occurs when a person either "does something a reasonable person would not do" or "fails to do something a reasonable person would do." During

deliberations, the jury asked the district court if " 'no duty to warn' mean[t] that [respondent] had no obligation to try to keep [appellant] away from the skid loader." The district court responded that it could not "give ... further instruction on this. Please rely on the jury instructions provided to you."

■■■■ While respondent did not owe a specific legal duty to warn or protect appellant, respondent did owe appellant a general duty to exercise reasonable care and a duty to exercise reasonable care to prevent harm to appellant when respondent created an admittedly dangerous situation. The exercise of reasonable care upon the creation of a dangerous situation may include giving a warning to anyone placed at risk. Section 321 of the Restatement (Second) of Torts discusses the duty of care in dangerous situations and states:

(1) If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, *he is under a duty to exercise reasonable care to prevent the risk from taking effect.*

(2) The rule stated in Subsection (1) applies even though at the time of the act the actor has no reason to believe that it will involve such a risk.

Restatement (Second) of Torts § 321 (1965) (emphasis added); *see Stepnes v. Adams,* 452 N.W.2d 256, 259 (Minn.App. 1990) (concluding appellant's failure to establish that respondent "both created and failed to remedy the dangerous condition precludes liability under Restatement (Second) of Torts § 321"), *review denied*

(Minn. May 7, 1990). The comments to section 321 provide that subsection (1) "applies whenever the actor realizes or should realize that his act has created a condition which involves an unreasonable risk of harm to another, or is leading to consequences which involve such a risk." Restatement (Second) of Torts § 321 cmt. a. The illustrations make clear that the exercise of reasonable care can include shouting a warning to another. For example:

A is playing golf. He sees no one on or near a putting green and drives to it. While the ball is in the air, B, another player, suddenly appears from a bunker directly in the line of A's drive. *A is under a duty to shout a warning to B.*

*Id.* ill. 1 (emphasis added).[2] The jury's question reflects that it was having difficulty reconciling the duty owed upon the creation of a dangerous situation with the no-duty-to-warn instruction.

We conclude that the overall framework of the duty-to-warn issue in this case is similar to *Zylka by Zylka v. Leikvoll,* 274 Minn. 435, 144 N.W.2d 358 (1966). *Zylka* involved two successive car accidents on a winter evening. *Id.* at 437–441, 144 N.W.2d at 361–63. A car was being pushed by a wrecker truck. *Id.* at 437, 144 N.W.2d at 361. As the vehicles waited to cross a divided highway, the car was struck by a Ford. *Id.* at 437–38, 144 N.W.2d at 361. At the time of this first collision, the wrecker driver did not have the red lights on top of his truck engaged. *Id.* at 438, 144 N.W.2d at 361. After the collision, the drivers of the car and the Ford began to direct traffic around the accident. *Id.,* 144 N.W.2d at 362. The

---

**2.** Similarly,

A, carefully driving his truck, skids on an icy road, and his truck comes to rest in a position across the highway where he is unable to move it. *A fails to take any steps to warn approaching vehicles of the blocked*

*highway.* B, driving his automobile with reasonable care, does not see the truck, skids on the ice and collides with it, and is injured. A is subject to liability to B.

Restatement (Second) of Torts § 321 ill. 3 (emphasis added).

driver of the car directed traffic without a flashlight or flare, even though both were available in the wrecker truck. *Id.* at 439, 144 N.W.2d at 362. After checking on the conditions of the other two drivers, the driver of the wrecker returned to his truck and got a flashlight. *Id.* He again returned to the truck and this time activated the truck's red flashing lights. *Id.* The wrecker driver and another individual also began to direct traffic, but used flares. *Id.* at 439-40, 144 N.W.2d at 362. Another car came through the area without slowing down, although the driver testified that he saw the wrecker's red lights. *Id.* at 440, 144 N.W.2d at 362-63. This driver did not see the flares and his car ultimately struck (1) the first car, where the driver of the Ford had returned to sit, causing the driver of the Ford to be thrown from the vehicle, and (2) a pedestrian, causing serious injuries. *Id.* at 440-41, 144 N.W.2d at 363.

Under the law of the case, the wrecker driver was determined to have created a dangerous situation as to the second collision. *Id.* at 446, 144 N.W.2d at 366. The district court gave the following instruction to the jury:

> If a person creates or participates in creating a dangerous situation on a highway, he is under a common law duty to use reasonable care to remove or correct the situation to the extent that that is reasonably feasible or possible, and to use reasonable care to warn others of the danger while the danger exists.

*Id.* at 447, 144 N.W.2d at 367. The Minnesota Supreme Court stated:

> We believe, and find support for the proposition, that one's participation in the creation of a hazard need not be negligent for the duty of care to arise. Though not negligent, it is clear that [the wrecker driver] was a participant in the creation of the first accident when,

in performing a contract to start [the] car, the latter became involved in a collision. *A duty then fell upon [the wrecker driver], not as a volunteer but as one called upon to exercise reasonable care, either to remove the hazard or give adequate warning to others.*

*Id.* (emphasis added). The court upheld the jury's finding that the wrecker driver was negligent as to the second collision because he made no attempts to coordinate with the other drivers as to handling the situation; failed to illuminate the accident scene; did not effectively use the illumination devices in his truck or give them to others; and did not push or attempt to push the Ford off of the highway with his wrecker. *Id.* at 447-48, 144 N.W.2d at 367. As applied to this case, absent the no-duty-to-warn instruction, the jury could have found respondent's exercise of reasonable care included shouting a warning to appellant or attempting to wave appellant back. Therefore, because the exercise of reasonable care upon the creation of a dangerous situation may include giving a warning to the at-risk party and in light of the jury's question, we are persuaded by appellant's argument that the no-duty-to-warn and no-duty-to-protect instructions confused the negligence principles at issue here.

However, "[b]efore a new trial may be ordered on such grounds, it must be shown that the improper instructions resulted in prejudice." *Kroning v. State Farm Auto. Ins. Co.,* 567 N.W.2d 42, 48 (Minn.1997). "An error is prejudicial if there is a reasonable likelihood that the giving of the instruction in question would have had a significant effect on the verdict of the jury." *Youngquist,* 716 N.W.2d at 386 (quotation omitted).

*Kroning* was an action to recover uninsured motorist benefits. 567 N.W.2d at 44. Kroning was severely injured when

the brakes of his semi-tractor trailer truck locked up. *Id.* Kroning claimed that a red car pulled in between his truck and a white car in front of him, causing him to brake. *Id.* How the accident occurred and whether the red car even existed were issues at trial. *See id.* at 44–45. Kroning's wife and daughter both testified that, on the day of the accident, Kroning "told them that a red car caused the accident." *Id.* at 44. There was no mention of a red car in the accident report prepared by law enforcement. *Id.* Both Kroning and Mrs. Kroning testified as to the financial impact of the accident. *Id.* at 45. The insurance company sought, and was permitted, to introduce evidence of collateral source payments the Kronings had received as a result of the accident as a means of challenging Mrs. Kroning's credibility, as her testimony "conveyed to the jury that the accident had such a severe financial impact that the Kronings were 'in dire financial straights [sic].' " *Id.* (alteration in original).

> The district court instructed the jury:
>
> I am going to permit questions on this issue [collateral source payments] for the very limited purpose ... limited solely to the question of how it may bear upon her credibility or believability as a witness.... It's not to prove the third-party source, not to prove the amounts, solely as to whether you are going to believe her on this or any other subject.

*Id.* (alterations in original). Counsel for the Kronings objected and the district court further instructed the jury:

> On direct examination this witness [Mrs. Kroning] testified with respect to the future and her husband and her and their financial affairs. He [sic] is now being asked questions on that issue, their financial affairs in the future. Whether you want to call it social security or work comp. is immaterial. I am

allowing that testimony to go in for one purpose only. That purpose is as it attacks her credibility. She starts out with her direct testimony that they are looking forward to the future with no income in sight. It now develops that there may be some other income in sight, not what it is, not for whom it is, but it has an effect upon her creditability [sic] or her believability by you.

*Id.* (alterations in original). "Based on this second instruction, the Kronings moved for a mistrial, claiming that the instruction 'completely poisoned the jury.' That motion was denied." *Id.* The jury subsequently found that, while the Kronings had incurred damages as a result of the accident, the red car—which supposedly triggered the accident—did not exist. *Id.* Observing that the existence of the red car was a pivotal issue in the case, the Minnesota Supreme Court reversed the jury's verdict and remanded the case for a new trial, concluding the district court's instructions prejudiced the Kronings:

> Mrs. Kroning's testimony, particularly her testimony with respect to the red car, was key to answering this question. Anything casting doubt on her credibility had great potential to sway the jury, and while it was proper for State Farm to attack her credibility, it was improper for the court to do so. The instructions, as given, were such that they could only have had the effect of discrediting Mrs. Kroning and impairing the value of her testimony.

*Id.* at 48.

■ In the present case, the no-duty-to-warn and no-duty-to-protect instructions are not as clearly prejudicial as the instructions in *Kroning.* However, appellant contends that, by giving these instructions, the district court overemphasized respondent's case. We agree. The district court's use of the no-duty-to-protect and

no-duty-to-warn instructions created a *Kroning*-like situation where, instead of discrediting the plaintiff's key witness, the district court seriously hampered appellant's permissible argument that the exercise of reasonable care under these circumstances required respondent to give a warning to appellant or attempt to prevent appellant from being harmed by directing him away from the skid loader.

 When an erroneous instruction destroys the substantial correctness of the charge or creates substantial prejudice, a new trial should be granted. *Youngquist*, 716 N.W.2d at 386. Because the exercise of reasonable care upon the creation of a dangerous situation may encompass a warning or some other affirmative action to prevent the risk of harm from taking effect, and in light of the jury's question to the district court, we conclude the district court abused its discretion in giving respondent's requested jury instructions and denying appellant's motion for a new trial. We therefore reverse in part and remand this case for a new trial. On remand, the district court will hold a new trial without the no-duty-to-protect and no-duty-to-warn instructions. The district court will instruct the jury that the exercise of reasonable care by a party who creates a dangerous situation may include warning others of the danger while the danger exists. The parties will then be free to argue what would have been reasonable under the circumstances of this case. Because we conclude that the jury instructions were erroneous and prejudicial to appellant, thus warranting a new trial, we need not address whether the district court abused its discretion in repeating the no-duty-to-warn instruction after the parties' closing arguments.

### DECISION

Because the *duty* to warn is predicated upon the existence of a special relationship between the parties, the district court did not err in concluding there was no duty to warn appellant as a matter of law as no special relationship existed between the parties. However, a warning might be reasonable in situations not involving a special relationship. By creating a dangerous situation, respondent owed appellant a duty of reasonable care commensurate with the risks involved. The exercise of reasonable care by respondent may have included giving a warning to appellant. Therefore, the district court abused its discretion in giving the no-duty-to-protect and no-duty-to-warn jury instructions as they confounded the standard of care owed to appellant, overemphasized respondent's case, and confused the jury, causing substantial prejudice to appellant.

**Affirmed in part, reversed in part, and remanded.**