*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1369**


Fred Newell, et al.,
Appellants,


vs.


Timothy Eide, et al.,
defendants and third party plaintiffs,
Respondents,


vs.


Norcostco, Inc.,
Third Party Defendant.


**Filed June 1, 2015
Affirmed
Bjorkman, Judge**


Hennepin County District Court
File No. 27-CV-13-17700

James C. Selmer, Marc M. Berg, Brian Hansen, J Selmer Law, P.A., Minneapolis, Minnesota (for appellants)

Louise A. Behrendt, Richard C. Scattergood, Stich, Angell, Kreidler, Dodge & Unke, P.A., Minneapolis, Minnesota (for respondents)

       Considered and decided by Bjorkman, Presiding Judge; Johnson, Judge; and Rodenberg, Judge.

UNPUBLISHED OPINION

**BJORKMAN**, Judge

Appellant challenges summary judgment, arguing that respondents owed him a duty to maintain and warn of defects in a dry-cleaning machine that respondent regularly repaired. Because respondent did not have a duty with respect to the harm that occurred, we affirm.

**FACTS**

In February 2010, appellant Fred Newell was injured when a dry-cleaning machine malfunctioned at his workplace, third-party defendant Norcostco, Inc. Norcostco is a costume-rental and theater-supply company that provides services including dry cleaning costumes and formal wear. For this purpose, Norcostco owned two VIC model 1265 dry-cleaning machines.[1]

Respondent Timothy Eide owns respondent T&E Mechanical Services, Inc. Eide regularly repaired Norcostco's dry-cleaning machines beginning in the mid-1980s and installed both machines when Norcostco moved to its current location in Golden Valley. Eide is a trained and licensed pipefitter who has over 30 years of experience working with dry-cleaning equipment.

Eide did not have a written contract with Norcostco and performed repairs on an as-needed basis. Typically, Norcostco attempted to pinpoint mechanical problems and retained Eide to perform specific repairs. On occasion, if Eide noticed an unidentified issue with a dry-cleaning machine while conducting a repair he would bring it to

---

[1] Only one machine was in use on the day in question. We refer to this as the VIC-1.

Norcostco's attention. Once Eide completed his repairs, he would run the machine to ensure it was working properly, but he did not conduct further inspections or provide general maintenance services.

On the day of the accident, Newell was performing a "cook out" procedure on the VIC-1. A cook out is a distillation process that cleans one of the primary chemicals used in the dry-cleaning machines. While Newell was performing the procedure, a door on the VIC-1 burst open, spraying him with the hot chemical. Newell was knocked backward, injuring his shoulder and suffering extensive burns to his lower body.

Newell and his wife brought this action alleging that Eide was negligent in failing to thoroughly inspect and maintain the VIC-1 and failing to warn Norcostco and its employees regarding its safe use and maintenance. Eide moved for summary judgment dismissing Newell's claims, arguing that Eide did not owe a duty to inspect and maintain the dry-cleaning machines and that his actions were not the proximate cause of the accident. In opposing the motion, Newell submitted the report of Glen Philips, who opined that the accident resulted from a leaking steam coil that caused excess pressure to build up within the VIC-1 still. Philips also stated that the VIC-1 had a weakened retainer bar that gave way under the pressure build-up causing the still door to burst open. And Philips asserted that licensed professionals such as Eide are obligated to inspect and warn as to all aspects of a dry-cleaning machine's operation. It is undisputed that Eide did not work on either the door or the retainer bar that failed.

The district court granted summary judgment concluding that Eide did not owe Newell a duty to maintain and warn of potential defects with the VIC-1 that were unrelated to Eide's repair work. Newell appeals.

## DECISION

On appeal from summary judgment, we determine whether there are genuine issues of material fact and whether the district court erred in applying the law. *Bryson v. Pillsbury Co.*, 573 N.W.2d 718, 720 (Minn. App. 1998). We review the evidence de novo, in a light most favorable to the nonmoving party. *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364 (Minn. 2009).

Newell must prove four elements to establish a negligence claim: (1) the existence of a duty of care, (2) breach of that duty, (3) proximate causation, and (4) injury. *Bjerke v. Johnson*, 742 N.W.2d 660, 664 (Minn. 2007). "The existence of a duty of care is a threshold question because a defendant cannot breach a nonexistent duty." *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014). Whether a duty exists is a legal question, which we review de novo. *Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 581 (Minn. 2012).

Generally, an individual does not owe a duty to protect another from harm, even when he or she realizes or should realize that action is necessary for another's aid or protection. *Bjerke*, 742 N.W.2d at 665. But a duty exists if the defendant's own conduct creates a foreseeable risk of harm to a foreseeable plaintiff or if the parties are in a special relationship and the harm is foreseeable. *Domagala v. Rolland*, 805 N.W.2d 14, 23

4

(Minn. 2011). The district court concluded that Eide did not owe a duty to Newell because neither exception applies. We agree.

First, the record demonstrates that Eide's affirmative conduct did not create a foreseeable risk of harm. Newell concedes that Eide never worked on the VIC-1 components that failed, and was not aware of the defects that caused Newell's injuries. Eide had no obligation to do routine inspections or maintenance; Norcostco contracted with him to perform specific repairs on an as-needed basis. We are also not persuaded by Newell's argument that the professional standards applicable to licensed pipe fitters created a duty to inspect for and warn of possible defects beyond the limited scope of his repair work. While professional standards may define a duty of care, they do not create a duty. *See ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 307 (Minn. 1996). And superior knowledge of a dangerous condition alone, in the absence of a duty to provide protection, is insufficient to establish liability. *Harper v. Herman*, 499 N.W.2d 472, 475 (Minn. 1993).

Second, the nature of Eide's work for Norcostco demonstrates that there was not a special relationship that might have imposed a broader duty to identify, maintain, or warn of defects with the VIC-1. A special relationship may exist in situations where the plaintiff is "particularly vulnerable and dependent on the defendant," who holds considerable power over the plaintiff's welfare. *Donaldson v. Young Women's Christian Ass'n*, 539 N.W.2d 789, 792 (Minn. 1995); *see also Harper*, 499 N.W.2d at 474 (explaining special relationship may exist where plaintiff has been "deprived of normal opportunities for self-protection"). Minnesota courts recognize a limited number of

5

special relationships, which include "parents and children, masters and servants, possessors of land and licenses, [and] common carriers and their customers." *Bjerke*, 742 N.W.2d at 665 (alteration in original) (quotation omitted). Courts have declined to expand this list, even in cases involving exposure to severe and immediate threats. *See, e.g.*, *H.B. by Clark v. Whittemore*, 552 N.W.2d 705, 708-09 (Minn. 1996) (concluding there was not a special relationship requiring trailer park supervisor to protect victimized children from further sexual assault by park resident); *Donaldson*, 539 N.W.2d at 793 (holding that YWCA facility did not have a special relationship with at-risk resident that would create a duty to prevent her suicide); *Harper*, 499 N.W.2d at 474-75 (holding that boat owner was not in a special relationship with a social guest to impose a duty to warn of shallow water).

As noted above, Norcostco retained Eide almost exclusively to make specific repairs on an as-needed basis. Even after a mechanical issue was identified, Norcostco played an active role in defining the scope of repairs that Eide performed. While Eide occasionally inspected machines prior to the busy season to ensure they were ready to handle the increased use, he did so only at Norcostco's request. Beyond these isolated instances, Norcostco did not ask Eide to routinely conduct general inspections or general maintenance. Nothing about these circumstances leads us to recognize a special relationship requiring Eide to do anything other than competently complete the specific repairs he was asked and paid to perform. The conclusion that an as-needed repair person does not owe a broad duty to inspect for and warn of defects is consistent with our general caution and reluctance "to impose a duty to protect between those conducting

6

business with one another." *Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 674 (Minn. 2001).

Finally, we note that the duty Newell seeks to impose on Eide resembles the duty owed by manufacturers and suppliers to identify and warn of product defects. Indeed, Newell relies on several well-recognized product-liability cases that address the duty of manufacturers and suppliers to inspect for or warn of dangerous conditions. *See Gray v. Badger Mining Corp.*, 676 N.W.2d 268, 274 (Minn. 2004); *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 394-95, 111 N.E. 1050, 1055 (1916). We are not persuaded by Newell's attempts to analogize Eide to the defendants in those cases. There is no precedent extending the well-defined duties of manufacturers and suppliers to inspect for and warn about product defects to persons who later repair those products. We decline to do so here.

**Affirmed.**